Argued and submitted March 12, Portland, reversed and remanded for
reconsideration June 12, petition for review denied October 2, 2003 (336 Or 60)

## Robert SMITH,
*Petitioner,*

*v.*

## SALEM-KEIZER SCHOOL DISTRICT
and Fair Dismissal Appeals Board,
*Respondents.*

FDA 01-3; A117703

71 P3d 139

John S. Bishop II argued the cause for petitioner. On the
briefs were Elizabeth A. McKanna, Elizabeth A. Joffe, and
McKanna Bishop Joffe.

Nancy Hungerford argued the cause for respondent
Salem-Keizer School District. With her on the brief were
Jennifer L. Hungerford and The Hungerford Law Firm.

Richard D. Wasserman waived appearance for respondent Fair Dismissal Appeals Board.

Before Landau, Presiding Judge, and Armstrong and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Petitioner seeks judicial review of an order of the Fair Dismissal Appeals Board (FDAB). FDAB dismissed petitioner's appeal of his termination on the ground that FDAB did not have jurisdiction, because petitioner was a probationary teacher whose procedural rights were limited to a school board hearing. The issue in this case is whether FDAB erred, as a matter of law, by concluding that petitioner was a probationary teacher with limited appeal rights rather than a contract teacher with contested case hearing rights. We reverse and remand.

The parties stipulated to the facts and FDAB accepted that stipulation. Petitioner was employed by the Salem-Keizer School District (the district). His first year of teaching as an auto shop instructor was the 1998-99 school year, and he continued teaching the following school year, 1999-2000. The district retained petitioner for his third year, the 2000-01 school year. In March 2001, petitioner was offered, and he accepted, a fourth and fifth year of employment with the district for the 2001-02 and 2002-03 school years. On June 12, 2001, the district notified petitioner that he was dismissed as of June 13, 2001.

In each of the three years that he taught, petitioner was employed by the district for more than 135 days. During the 2000-01 school year, petitioner taught from the beginning of the school year until he was terminated, approximately three days before the end of the full school year.[1] Petitioner timely appealed his dismissal to FDAB, which concluded that it had no jurisdiction and dismissed petitioner's appeal.

We review for errors of law. ORS 183.482(8)(a). The district does not contest that our review is for errors of law but argues that FDAB's legal conclusions should be afforded "considerable weight." Without deciding whether FDAB's legal conclusions are actually entitled to that weight,[2] we

---

[1] In the relevant years, there were approximately 190 days in a school year.

[2] The district cites *1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384-91, 752 P2d 271 (1988), as support for its argument. In that case, the Supreme Court stated:

"This court has recognized that in some circumstances an agency's interpretation of a legal rule though not binding is entitled to our careful consideration.

note that, even if they are, we are not *bound* by FDAB's conclusions. *1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 389-90, 752 P2d 271 (1988). Rather, as we will explain below, this case involves statutory construction, and we follow the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980), the Supreme Court outlined "three classes of statutory terms, each of which conveys a different responsibility for the agency in its initial application of the statute and for the court on review of that application." The first class is of exact terms—"statutory terms which impart relatively precise meaning, *e.g.*, 21 years of age, male, 30 days, Class II farmland, rodent, Marion County." *Id.* Judicial review of exact terms "would normally be for substantial evidence * * *." *Id.* at 224. "The second class is of terms which are less precise," or "inexact," and the inquiry involves determining the intent of the legislature. *Id.* "The determination of the meaning of a statute is one of law, ultimately for the court." *Id.* The third class of statutory terms expresses "noncompleted legislation which the agency is given delegated authority to complete." *Id.* at 228.

■    The question presented here is one of inexact terms. We must determine whether petitioner was a "probationary teacher" or a "contract teacher" at the time of his dismissal with limited procedural rights or whether he was a contract teacher entitled to a contested case hearing before FDAB. Whether petitioner was a contract or a probationary teacher presents an issue of statutory interpretation and, "[i]n [the] first level of analysis, the text of the statutory provision itself

---

The weight, or 'consideration,' 'respect,' 'deference,' 'attention' (none of which should be taken as a term of art), to be given an agency's interpretation can be implied from a number of characteristics:

"(1) The agency may have a broad mandate to promulgate rules to be administered by itself. * * *

"(2) * * * when a statute assigns the agency's tasks in broad terms that delegate to the agency responsibility for completing a general legislative policy. * * *

"(3) A third consideration, agency 'expertise,' generally relates to facts * * * in a particular field * * *."

(Internal citations and footnote omitted.)

is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE*, 317 Or at 610. At this first level of analysis, we also consider maxims of statutory construction, such as "the rule that words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* at 611.

Accordingly, we examine the text of the relevant statutes, beginning with the statutes pertaining to contract teachers. ORS 342.815(3) defines the term "contract teacher" as "any teacher who has been regularly employed by a school district for a probationary period of *three successive school years, and who has been retained for the next succeeding school year.*" (Emphasis added.)

Contract teachers are entitled to two-year employment contracts and "shall not be subjected to the requirement of annual appointment * * *." ORS 342.845(1). Furthermore, a contract teacher may not be dismissed, except for specific reasons outlined in ORS 342.865. ORS 342.895 outlines the procedures that govern a contract teacher's dismissal and provides, in part:

"(1) Contract teachers shall be employed * * * pursuant to two-year employment contracts.

"(2) Authority to dismiss or not extend a contract teacher is vested in the district school board subject to the provisions of the fair dismissal and contract extension procedures * * * and only after recommendation of the dismissal or nonextension of contract is given to the district school board by the superintendent.

"(3)(a) At least 20 days before recommending to a board the dismissal of the contract teacher, the district superintendent shall give written notice to the contract teacher by certified mail or delivered in person of the intention to make a recommendation to dismiss the teacher. The notice shall set forth the statutory grounds upon which the superintendent believes such dismissal is justified, and shall contain a plain and concise statement of the facts relied on to support the statutory grounds for dismissal. * * * A copy of ORS 342.805 to 342.937 shall also be sent to the contract teacher.

"(b) · * * * Notice of the board's action shall be given to the contract teacher as soon as practicable by certified mail, return receipt requested or in the manner provided by law for the service of a summons in a civil action.

"(4)(a)   * * * the district school board may extend a contract teacher's employment for a new two-year term * * *.

"(b)   If the district school board does not extend a contract teacher's contract * * * the district superintendent * * * shall place the teacher on a program of assistance for improvement. * * *

"(c)   * * * the district board, upon recommendation of the superintendent, may elect by written notice to the teacher * * * not to extend the teacher's contract * * *. A contract teacher whose contract is not extended may appeal the nonextension to [FDAB]."

(Emphasis added.)

Once a contract teacher's employment has been terminated, that teacher has appeal rights pursuant to ORS 342.905, which provides, in part:

"(1)   If the district school board dismisses the teacher or does·not extend the contract of the contract teacher, the teacher * * * may appeal that decision to [FDAB] * * *[.]

"* * * * *

"(5)(a)   * * *

"(b)   *The [FDAB] panel shall hold a contested case hearing* * * * within 100 days of the receipt by the teacher of notice of dismissal or of the statement of reasons in the case of contract nonextension."

(Emphasis added.)

We next examine the statutes governing the rights of probationary teachers. ORS 342.815(6) defines "probationary teacher" as "any teacher employed by a fair dismissal district[3] who is not a contract teacher."

ORS 342.513(1) governs the renewal of probationary teachers' employment contracts and provides, in part:

---

[3] The district is a fair dismissal district.

"Each district school board shall give written notice of the renewal or nonrenewal of the contract * * * to all teachers * * * who are not contract teachers * * *. * * * If any district school board fails to give such notice * * * the contract shall be considered renewed for the following school year * * *."

ORS 342.835 discusses the termination of probationary teachers and their appeal rights and provides:

"(1)   The district board * * * may discharge or remove any probationary teacher * * * *at any time* * * * *for any cause* considered in good faith sufficient by the board. The probationary teacher shall be given a written copy of the reasons for the dismissal, and upon request shall be provided a *hearing* thereon *by the board,* at which time the probationary teacher shall have the opportunity to be heard * * *.

"(2)   For *any cause it may deem in good faith sufficient, the district board may refuse to renew the contract of any probationary teacher.* However, the teacher shall be entitled to notice of the intended action by April 1, and upon request shall be provided a hearing before the district board. Upon request of the probationary teacher the board shall provide the probationary teacher a written copy of the reasons for the nonrenewal, which shall provide the basis for the hearing.

"(3)   *If an appeal is taken* from any hearing, *the appeal shall be* to the circuit court for the county in which the headquarters of the school district is located and shall be *limited to the following*:

"(a)   *The procedures at the hearing*;

"(b)   *Whether the written copy of reasons for dismissal* required by this section *was supplied; and*

"(c)   In the case of nonrenewal, *whether notice of nonrenewal was timely given.*"

(Emphasis added.)

Thus, the legislature has divided the world of public school district teachers into two mutually exclusive sets: contract and probationary teachers. Utilizing the *PGE* analysis, we must determine whether FDAB erred, as a matter of law, by concluding that petitioner was a probationary teacher. We

first consider the text of ORS 342.815(3), a two-pronged statute that defines the term "contract teacher." To be a contract teacher, one must (1) be regularly employed by a school district for a probationary period of three successive school years and (2) be retained by the school district for the next succeeding school year. ORS 342.840 defines "school year" and provides that, "[f]or purposes of determining length of service for a probationary teacher, a teacher employed for 135 consecutive days in any school year shall receive credit for a full year of employment."

We conclude that petitioner is a contract teacher under ORS 342.815(3). First, petitioner was regularly employed by the district for three successive school years because he was in his third successive school year when his employment was terminated. It is not disputed that petitioner was employed at least 135 consecutive days each of those three school years. Second, petitioner satisfies ORS 342.815(3) because, when his employment was terminated, he had been retained for the next succeeding school year. In fact, petitioner was retained by the school district for a fourth and fifth year. That is significant because it is consistent with ORS 342.895(1) and (4)(a), which state that contract teachers shall be provided two-year employment contracts.

The district contends that petitioner is not a contract teacher because he was terminated approximately three days before serving for a full, 190-day school year. However, that interpretation does not comport with the plain meaning of ORS 342.840, which states that petitioner "*shall* receive credit for a full year of employment" if he is employed for "*135* consecutive days in any school year." (Emphasis added.)

In support of its assertion that petitioner is not a contract teacher, the district turns to legislative history. However, under *PGE*, the first step in statutory analysis is to examine the text and context of the statute and, "[i]f the legislature's intent is clear from the * * * inquiry into text and context, further inquiry is unnecessary." 317 Or at 611. Pursuant to *PGE*, "*[i]ff, but only if*, the intent of the legislature is not clear from the text and context inquiry, the court will then move to the second level, which is to consider legislative history * * *." *Id*. at 611-12 (emphasis added). However, "[a]

court shall give the weight to the legislative history that the court considers to be appropriate[,]" ORS 174.020(3). In this instance, the legislative history is of no assistance. Therefore, we elect to give legislative history little weight because the legislature's intent in this case is clear from the text and context of the relevant statutes.[4] Furthermore, we held that there is no ambiguity in ORS 342.815(3) or ORS 342.840.

The district does not disagree. Rather, the district argues that the statutes are contradictory and, for that reason, we must consider legislative history. However, that agreement is based on failing to interpret ORS 342.840 as statutory context to determine what the legislature meant by "school year" in ORS 342.815(3) and, instead, considering the statutes separately and assuming that "school year" in ORS 342.815(3) means a full 190 days. There is no basis for that assumption, given that ORS 342.815(3) does not specify how many days a teacher must teach before those days constitute a full school year, and ORS 342.840 is the only statute that assists us contextually in determining what the legislature meant by the term "school year."

The district further argues that this case is similar to *Wesockes v. Powers Sch. Dist. No. 31*, 57 Or App 652, 646 P2d 68 (1982), where we held that a teacher who was in his third year of teaching and was dismissed five days before the completion of the school year was a probationary teacher, despite the fact that the teacher's contract had been renewed for a fourth year. In *Wesockes*, however, we did not consider ORS 342.840 because that statute had not yet come into effect. We stated that "[w]e express no opinion as to whether, if [ORS 342.840] were to apply, the outcome of this case would be different." *Wesockes*, 57 Or App at 655 n 1. In this case, we consider ORS 342.840 and find that the outcome is, in fact, different, as explained above.

Furthermore, in *Wesockes*, we were faced with a different statutory scheme. The term "contract teacher" was not added to the statutes until 1997. Or Laws 1997, ch 864, § 4. What we now know as "contract teachers" were formerly

---

[4] Additionally, the legislative history that the district relies on is not persuasive.

referred to as "permanent teachers." *Former* ORS 342.815(4) (1979), *renumbered as* ORS 342.815(3) (1997), *amended by* Or Laws 1997, ch 864, § 4. The definition of "permanent teacher" on which *Wesockes* relied was as follows:

> " 'Permanent teacher' means any teacher who has been regularly employed by a fair dismissal district for a period of *not less than three successive school years*, whether or not the district was such a district during all of such period and who has been reelected by such district *after the completion of such three-year period* for the next succeeding school year."

*Former* ORS 342.815(4) (emphasis added).

The definition of "permanent teacher" relied on in *Wesockes* is fundamentally different from the definition of "contract teacher" that we rely on in this case. ORS 342.815(3) defines "contract teacher" as "any teacher who has been regularly employed by a school district for a *probationary period* of three successive school years, and who has been retained for the next succeeding school year." (Emphasis added.) ORS 342.815(3) does not include the phrase "not less than three successive school years." Additionally, it is significant that *former* ORS 342.815(4) did not include the words "probationary period" and that ORS 342.840 begins with the phrase "[f]or purposes of determining length of service for a probationary teacher." It is also significant that ORS 342.815(3) does not include the phrase "after the completion of such three-year period."

*Wesockes* is, therefore, not controlling because it was decided before the relevant statutory scheme changed to comport with the legislature's addition of ORS 342.840. In sum, FDAB erred as a matter of law in dismissing petitioner's appeal. The plain text and context of the statutes demonstrate that petitioner is a contract teacher pursuant to ORS 342.815(3). As a contract teacher, petitioner is entitled to a contested case hearing and is under FDAB's jurisdiction.

Reversed and remanded for reconsideration.