Argued and submitted April 24, reversed and remanded for reconsideration
October 18, 2006

In the Matter of the Compensation of
Adam M. Karjalainen, Claimant.

Adam M. KARJALAINEN,
*Petitioner,*

*v.*

CURTIS JOHNSTON & PENNYWISE, INC.,
and Hartford Insurance Company,
*Respondents.*

03-03986, 03-06069; A127490

146 P3d 336

R. Adian Martin argued the cause and filed the briefs for petitioner.

John E. Snarskis argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

### LANDAU, P. J.

At issue in this case is whether claimant has a "pre-existing condition" that triggers a more demanding burden of proof under the workers' compensation statutes. A "preexisting condition" is one that, among other things, has been either diagnosed or treated as of the time of injury. ORS 656.005(24)(a). That definition is subject to an exception for "arthritis or an arthritic condition." *Id.* That is, arthritis or an arthritic condition need not have been treated or diagnosed to be considered a preexisting condition. The parties in this case dispute whether claimant suffers from "arthritis or an arthritic condition."

The Workers' Compensation Board (board) concluded that, although the term "arthritis or an arthritic condition" appears in a statute, its meaning is essentially one of fact that is determined by the testimony of medical professionals and that the more persuasive medical evidence in this case is that claimant has arthritis. Claimant contends that the board is mistaken and that, instead, the meaning of the statutory term must be determined by reference to familiar interpretive principles and that those interpretive principles lead to a definition of arthritis that, on this record, does not apply to him. We conclude that claimant is correct and therefore reverse and remand for reconsideration.

The following facts are not in dispute. Claimant fell down a flight of stairs at work and landed on his tail bone. Employer initially accepted a claim for a nondisabling thoracic strain. Following diagnostic imaging, doctors determined that claimant had a herniated disc at L5-S1, as well as moderate degenerative disc disease at the same level and mild degenerative disc disease in other areas of the spine. Claimant asked that the scope of the acceptance be expanded to include the disc herniation and a lumbar strain. Employer denied the disc herniation, but modified its acceptance to include a lumbar strain. Claimant requested a hearing on the partial denial.

At the hearing, the parties disputed the appropriate burden of proof. Employer argued that, because claimant's

disc herniation is a result of both his work injury and a "pre-existing condition" of degenerative disc disease, the claim for disc herniation must be evaluated as a "combined condition"—that is, it is compensable only if the work injury is shown to be its major contributing cause. Claimant argued that, because his degenerative disc disease is not a "preexisting condition" within the meaning of the workers' compensation statutes, his claim cannot properly be evaluated as a combined condition. Instead, claimant argues, it is compensable if he demonstrates that the work injury was merely a material contributing cause of the disc herniation.

Central to that dispute was whether claimant's degenerative disc disease is a "preexisting condition" within the meaning of the statutes. ORS 656.005(24)(a) defines "preexisting condition" as

"any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that:

"(A) *Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis; and*

"(B)(i) In claims for an initial injury or omitted condition, the diagnosis or treatment precedes the initial injury;

"(ii) In claims for a new medical condition, the diagnosis or treatment precedes the onset of the new medical condition; or

"(iii) In claims for a worsening pursuant to ORS 656.273 or 656.278, the diagnosis or treatment precedes the onset of the worsened condition."

Pared to essentials—and cleansed of double-negatives—the statute means that a preexisting "arthritis or an arthritic condition" will be considered a "preexisting condition" within the meaning of ORS 656.005(24)(a) whether or not it had been diagnosed or treated at the time of the injury. About that much there was no dispute.

What the parties did dispute was whether claimant's degenerative disc disease qualifies as "arthritis or an

arthritic condition." Not surprisingly, employer argued that the degenerative disc disease is a form of arthritis, which would mean that the disease is a "preexisting condition" that, in turn, would trigger the more demanding burden of proof required for combined conditions. Claimant, meanwhile, argued that his disease is not a form of arthritis, which would mean that it is not a "preexisting condition" and that the more demanding burden of proof required for combined conditions would not apply.

At the hearing, medical professionals weighed in on the question whether the sort of degenerative disc disease that claimant suffers is "arthritis or an arthritic condition." Claimant's expert, Dr. Jura, testified that it is not, because "arthritis," as he understands it, is an inflammatory condition that, by definition, does not occur in the lumbar region. Employer's expert, Dr. Dordevich, on the other hand, testified that claimant's disease is "arthritis," because, as he understands the term, it can involve the lumbar discs.

The administrative law judge (ALJ) concluded that the dispute between the experts about the meaning of the statutory term "arthritis or an arthritic condition," although interesting, was irrelevant. According to the ALJ, the term is part of the statute and, as such, is subject to the interpretive principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Among those interpretive principles, the ALJ noted, is that words of common usage should be given their plain, ordinary meaning. The ALJ determined that "arthritis" is such a word of common usage. Looking to dictionaries of ordinary meaning and of medical terminology, he observed that the term is uniformly defined as "inflammation of one or more joints." Because neither of the experts testified that claimant's degenerative disc disease involves inflammation of a "joint," the ALJ concluded, it has not been established that claimant's degenerative disc disease is "arthritis or an arthritic condition." As a result, the ALJ concluded that claimant's degenerative disc disease is not a "preexisting condition" and that the more demanding burden of proof for combined condition claims does not apply. The ALJ then reviewed the other medical evidence and found that, as a matter of fact, claimant had established that his work-related injury was a material contributing cause of his disc herniation. The ALJ ordered employer's denial set aside.

Employer appealed to the board, and the board reversed. The board concluded that claimant's degenerative disc disease is "arthritis" and that, as a result, it is a "pre-existing condition" that triggers the more demanding burden of proof, which, the board found, claimant could not meet. The board reasoned that the ALJ had erred in treating the term "arthritis or an arthritic condition" as an ordinary statutory term. "Unlike the ALJ," the board explained, "we find that the question of whether claimant's degenerative disc disease is arthritis or an arthritic condition is a medical issue to be decided by the competing medical opinions in the particular case." The board rejected the ALJ's reliance on the ordinary meaning of the term in light of the fact that the medical experts in this case disagreed about the meaning of the term. According to the board, "there is apparently disagreement within the medical community regarding what constitutes 'arthritis' or an 'arthritic' condition. Under the circumstances, we decline to rely on dictionary definitions to decide this complex medical issue." In this particular case, the board stated, it found the testimony of Dordevich as to the meaning of the term most persuasive. As a result, the board concluded that, at least in this case, the term "arthritis or an arthritic condition" includes inflammation of parts of the body other than joints.

■ On review, claimant contends that the board erred in converting a question of law as to the meaning of the statutory term "arthritis or an arthritic condition" into a question of fact. According to claimant, the ALJ was correct, and the board erred in arriving at a contrary conclusion. Employer argues that the board correctly concluded that the meaning of the statutory term would be "decided on a case-by-case basis."

■ Thus framed, the issue implicates the role of an administrative agency in the construction and application of statutes enacted by the legislature. The seminal case in Oregon on that issue is *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980), in which the Supreme Court explained that the role of the agency depends on the precise nature of the statutory wording in dispute. Depending on whether the wording is "exact," "inexact," or "delegative," the agency—and ultimately the courts—have different roles and responsibilities.

"Exact" terms are those that impart precise meaning and, in effect, require no interpretation at all. *Id.* at 224. Examples include such terms as "21 years of age," "male," "30 days," "Class II farmland," "rodent," and "Marion County." *Id.* The terms require no further elaboration as to their meaning from either administrative agencies or the courts. Instead they require fact-finding by the agency, subject to substantial evidence review by the courts. *Id.*

"Inexact" terms are less precise. The are "open to various interpretations" and require first the agency and then the courts to determine what the legislature intended them to mean. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000). Examples include the terms "weapon," *Brundridge v. Board of Parole*, 192 Or App 648, 87 P3d 703 (2004); "wildlife," *State v. Couch*, 196 Or App 665, 672, 103 P3d 671 (2004); "maintenance" as used in ORS 196.905(4)(b), *Owen v. Division of State Lands*, 189 Or App 466, 76 P3d 158 (2003); and "probationary teacher," *Smith v. Salem-Keizer School District*, 188 Or App 237, 71 P3d 139 (2003). Determining what the legislature intended inexact statutory terms to mean is a question of law, accomplished by applying the ordinary rules of statutory construction. *J. R. Simplot v. Dept. of Agriculture*, 340 Or 188, 131 P3d 162 (2006); *Coast Security Mortgage Corp.*, 331 Or at 354; *Carroll v. Boise Cascade Corp.*, 138 Or App 610, 614, 910 P2d 1111 (1996).

"Delegative" terms are those that express "non-completed legislation which the agency is given delegated authority to complete." *Springfield Education Assn.*, 290 Or at 228. The legislature employs a delegative term when it wishes to give an agency "the authority, responsibility and discretion for refining and executing generally expressed legislative policy." *Id.* Examples of delegative terms include "good cause," "unfair," "undue," "unreasonable" or "unprofessional conduct." *Id.* at 228, 230. Determining the scope of the agency's responsibility and discretion is itself a matter of statutory construction. *Hale v. Water Resources Dept.*, 184 Or App 36, 41, 55 P3d 497 (2002) ("Determining the general policy expressed in the statute is itself a matter of statutory construction.").

 In no event is the *meaning* of a statutory term determined as a question of fact. That is because statutes are—by definition—law, and their interpretation always is a question of law. *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309, 951 P2d 720 (1998); *Cramblit v. Diamond B Constructors*, 197 Or App 358, 368, 105 P3d 906 (2005). It is also because the *ad hoc*, case-by-case interpretation of statutes—possibly resulting in the same statutory term being construed to mean different things in different cases—would run afoul of constitutional obligations of equal treatment. *See Trebesch v. Employment Division*, 300 Or 264, 267 n 3, 710 P2d 136 (1985) (*ad hoc* agency decision-making violates Article I, section 20, of the Oregon Constitution).[1]

With the foregoing principles in mind, we turn to the question before us, namely, the meaning of the statutory term "arthritis or an arthritic condition" as used in ORS 656.005(24)(a). It is clearly an "inexact" term. Its meaning is not so precise as to require no interpretation at all; nor is it a term of delegation. Accordingly, our task is to determine what the legislature most likely intended it to mean as a matter of law. *Coast Security Mortgage Corp.*, 331 Or at 354. In making that determination, we are guided by familiar principles of statutory construction, requiring us to examine the text of the statute in context and, if necessary, legislative history and other aids to construction. *PGE*, 317 Or at 610-12.

 Included in our analysis of the text of the statute in context is the application of relevant rules that pertain to word usage. *PGE*, 317 Or at 611. Among those rules of construction that bear on word usage is the presumption that "words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.*; *see also Haynes v. Tri-County Metro.*, 337 Or 659, 663, 103 P3d 101 (2004); *Barrett v. Dept. of Corrections*, 203 Or App 196, 199, 125 P3d 98 (2005). When the legislature employs terms that have acquired specialized meanings and have become recognized "terms of art," however, we give those terms the specialized

---

[1] The board, for example, appears to have determined that, in some cases, degenerative disc disease is "arthritis" within the meaning of ORS 656.005(24)(a), *Andy Loke*, 57 Van Natta 437 (2005), and in some cases, it is not, *Paul Brock*, 57 Van Natta 1140 (2005).

meaning that they have acquired. *Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005) (terms of art are not given their plain, natural, and ordinary meaning). The fact that a statutory term may be one associated with a specialized discipline such as law, medicine, or psychiatry—and may have acquired a particular meaning within that discipline—does not mean that the determination of the meaning of the term is no longer a question of law; it means that, in determining the meaning of the term as a question of law, we will resort to such evidence of the specialized meaning as likely was available to the legislature at the time of enactment. *See, e.g., Oregon State Denturist Assn. v. Board of Dentistry*, 172 Or App 693, 701-02, 19 P3d 986 (2001) (resorting to medical dictionary and dictionary of ordinary meaning to determine meaning of statutory reference to "dentures").

In this case, "arthritis" is a common enough term and is no stranger to ordinary discourse. According to the Centers for Disease Control, it is the most common cause of disability in this country and, at the time the Oregon legislature enacted the statute at issue in this case, affected nearly one in four adults. Centers for Disease Control, *Prevalence of Disabilities and Associated Health Conditions—United States, 1991-92* 730-39 (1994). It is sufficiently familiar to be the subject of countless advertisements for analgesics, as well as the subject of well-known witticisms. (Jack Benny's famous quip, on the occasion of receiving an award, comes to mind: "I don't deserve this; but then again, I have arthritis, and I don't deserve that, either." Ashton Applewhite et al., *And I Quote* 10 (revised ed 2003).)

Reference to dictionaries of ordinary meaning shows that the term "arthritis" is commonly defined as "inflammation of one or more joints due to infectious, metabolic, or constitutional causes—compare DEGENERATIVE ARTHRITIS, GOUT, RHEUMATOID ARTHRITIS." *Webster's Third New Intl Dictionary* 123 (unabridged ed 2002). "Arthritic" is commonly defined as "**1 :** of, relating to, or affected with arthritis **2 :** creaky esp. with age." *Id.*

Even assuming that the term is a specialized term of art, however, the ordinary meaning in that more limited context remains essentially the same. The medical dictionary

definitions of "arthritis" are similar to the definitions contained in *Webster's*. *Stedman's Medical Dictionary* 149 (27th ed 2000), for example, defines "arthritis" as "[i]nflammation of a joint or a state characterized by inflammation of joints. SYN articular rheumatism. [G. fr. *arthron,* joint, + *-itis,* inflammation]." "Arthritic" means "[r]elating to arthritis." *Id. Dorland's Illustrated Medical Dictionary* (28th ed 1994) contains the same definition. And the *Sloane-Dorland Annotated Medical-Legal Dictionary* 61 (1987) defines "arthritis" as "rheumatism in which the inflammatory lesions are confined to the joints."

■ The board's rejection of the ordinary meaning of the statutory term rested on what it characterized as a current "disagreement in the medical community" about its meaning, based on the testimony of the expert witnesses. Post-enactment statements—even from legislators, much less from strangers to the enactment process—do not bear on what the legislature intended the wording of a statute to mean, however. *See, e.g., DeFazio v. WPPSS,* 296 Or 550, 561, 679 P2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors."); *Salem-Keizer Assn. v. Salem-Keizer Sch. Dist. 24J,* 186 Or App 19, 26-28, 61 P3d 970 (2003) (subsequent statements, even by legislators, "are not probative of the intent of statutes already in effect").[2]

■ Employer also insists that legislative history indicates that the legislature intended the meaning of the statute to be determined on a case-by-case basis. Under the rules of statutory construction, however, resort to legislative history is unnecessary in the absence of a demonstration that the words in dispute are capable of more than one reasonable construction. *See, e.g., State ex rel Dept. of Human Services v. Rardin,* 338 Or 399, 407, 110 P3d 580 (2005) ("If the legislature's intent is clear from the text and context of the statute,

---

[2] We do not mean to suggest that it is improper for a court or an agency to consider expert testimony as to the state of information available to the legislature at the time of enactment. *Cf. Oregon State Shooting Assn. v. Multnomah County,* 122 Or App 540, 544-45, 858 P2d 1315 (1993) (noting that trial court received expert testimony as to historical evidence pertaining to the meaning of a provision of the constitution adopted in 1857).

then further analysis is unnecessary."); *Walsh Construction Co. v. Mutual of Enumclaw,*338 Or 1, 10, 104 P3d 1146 (2005) (because first-level analysis "demonstrates the legislature's intent conclusively, we determine that consideration of legislative history is unnecessary").

In any event, even assuming for the sake of argument that resort to legislative history is appropriate, we conclude that that history is not as unequivocal as employer suggests. The wording at issue originated as Senate Bill 485 during the 2001 legislative session. It originally contained a definition of the term "arthritis," but the Senate committee that held hearings on the bill deleted the definition. The discussions concerning the deletion do not clearly reveal a reason for the decision. Tape Recording, Senate Committee on Business, Labor, and Economic Development, SB 485, Feb 21, 2001, Tape 33, Side A. The chair of the committee queried the administrator of the Workers' Compensation Division whether the term had already been defined by the courts. *Id.* The administrator replied that he did not know the answer to that question. *Id.* Another member of the committee asked a different witness, the co-chair of the Management, Labor Advisory Committee that proposed the amendment, "[W]hy do you want to kick this to the courts?" The witness replied that "we just decided that there was sufficient legal precedent that determined what arthritis meant and that, such as defined in the case law that, in fact, we'd just let that rule the day." *Id.* at Tape 32, Side B. Meanwhile, another witness testified that the amendment would "let the board work it out as a matter of specialized expertise case by case." *Id.* at Tape 33, Side B. The same witness, however, later suggested that, "[u]ltimately, the Court of Appeals or Supreme Court will come up with some language we'll all start being comfortable with." *Id.*

Our review of the legislative history reveals only that one witness apparently thought that there existed a sufficient definition of the term "arthritis," while others did not, and that at least one witness and a member of the Senate committee understood the effect of the amendment to be that the definition of the term was left to the courts, while another suggested that the term would be decided on a case-by-case basis. At best, the legislative history is inconclusive.

In short, as the ALJ correctly concluded, both the ordinary meaning and the more specialized definitions of the term "arthritis" consistently suggest that it refers to a inflammation of one or more joints. The board erred in rejecting that definition of the statutory term in favor of one based on what it regarded as the most persuasive evidence as to current medical understanding of the term.

Employer argues that, even if the board erred in its construction of the statute, we nevertheless should affirm because the board could have—and, according to employer, should have—found that claimant's degenerative disc disease is a preexisting condition because it was diagnosed before the injury. The board, however, did not have occasion to address that issue. Employer will have the opportunity to raise it to the board on remand.

Reversed and remanded for reconsideration.