Argued and submitted November 5, 2008, affirmed February 11, 2009

ROATS WATER SYSTEM, INC.,
*Respondent*
*Cross-Petitioner,*

*v.*

GOLFSIDE INVESTMENTS, LLC,
*Petitioner*
*Cross-Respondent,*

*and*

OREGON PUBLIC UTILITY COMMISSION,
*Respondent*
*Cross-Respondent.*

Public Utility Commission of Oregon
UM1248; A134978

202 P3d 199

Michael W. Peterkin argued the cause for petitioner-cross-respondent. On the briefs were Brian C. Hickman and Peterkin & Associates.

Mark G. Reinecke argued the cause for respondent-cross-petitioner. With him on the briefs was Bryant, Lovlien & Jarvis, P.C.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent-cross-respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner Golfside Investments, LLC, seeks judicial review of a final order of the Oregon Public Utility Commission (PUC), which granted respondent Roats Water System, Inc.'s (Roats) complaint in part, and ordered petitioner to pay certain residential development charges (RDCs) in accordance with PUC-approved water service tariffs. Petitioner assigns error to, *inter alia*, the PUC's determination that, even though petitioner is Roats's customer, the PUC had jurisdiction to consider Roats's complaint against petitioner pursuant to ORS 756.500.[1] As amplified below, we conclude that, pursuant to ORS 756.500(5), the PUC has jurisdiction with respect to any complaint filed by a public utility concerning "any matter affecting its own rates or service," including a complaint against a customer—and that jurisdiction is not qualified by the terms of ORS 756.500(1). We further reject without discussion petitioner's other assignments of error as well as Roats's cross-petition. Accordingly, we affirm on both the petition for judicial review and the cross-petition.

The PUC found the following facts, which are uncontested on judicial review.[2] *See Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (when the petitioner for judicial review does not dispute the agency's findings of fact, the reviewing court adopts those facts for purposes of judicial review). In 1999, the City of Bend approved the development of a manufactured home park (the property). In 2000, the developer of the property and Roats signed a Water Service Agreement (WSA) providing that, *inter alia*, Roats would supply water service to the property. The WSA further provided that, as per PUC tariff rules and regulations, such water service was subject to RDCs.

---

[1] ORS 756.500 describes, among other matters, the persons entitled to file a complaint under the PUC's procedures for complaints and investigations. The relevant parts of the statute are set out in detail below.

[2] The underlying dispute, pertaining to petitioner's liability for payment of RDCs, is complicated and convoluted. Because we address only petitioner's first assignment of error, *viz.*, petitioner's contention that the PUC lacked jurisdiction to consider Roats's complaint, we have significantly condensed the factual and procedural history.

Petitioner acquired the property in 2002. Petitioner immediately took steps to convert the property into a residential subdivision. In March 2005, the City of Bend conditionally approved the application to convert the property. About a month later, Roats notified petitioner that it had become aware of the property conversion, asserted that the conversion of the property to a residential subdivision triggered an obligation under the WSA and applicable tariffs to pay RDCs, and demanded that petitioner pay Roats those RDCs. Petitioner rejected that demand and, thus, refused to pay the RDCs at issue in this case.

In November 2005, Roats filed a petition for declaratory ruling with the PUC, requesting a ruling that petitioner is responsible for paying RDCs in conformance with the PUC tariffs and rules. The PUC declined to grant Roats's petition for declaratory ruling; rather, the PUC concluded that, due to apparent factual disputes, it was more appropriate for Roats to file a complaint against petitioner.

Roats filed a complaint with the PUC in February 2006, pursuant to ORS 756.500, alleging that petitioner has refused to pay RDCs as specified in (1) the applicable PUC tariffs and rules and (2) the WSA entered into with petitioner's predecessor, the original developer of the property.

Petitioner, as the defendant before the PUC, filed a motion to dismiss asserting, *inter alia*, that the PUC lacked jurisdiction to consider Roats's complaint. At the core of that jurisdictional dispute before the PUC—and, again, on judicial review—are the provisions of ORS 756.500. That statute provides, in part, as follows:

"(1) Any person may file a complaint before the Public Utility Commission, or the commission may, on the commission's own initiative, file such complaint. *The complaint shall be against any person whose business or activities are regulated by some one or more of the statutes, jurisdiction for the enforcement or regulation of which is conferred upon the commission.* * * *

"* * * * *

"(5) *Notwithstanding subsection (1) of this section, any public utility * * * may make complaint as to any matter*

*affecting its own rates or service with like effect as though
made by any other person,* by filing an application, petition
or complaint with the commission."

(Emphasis added.)

Petitioner contended that ORS 756.500—and, in
particular, the requirement in subsection (1) that the "com-
plaint shall be against any person whose business or activi-
ties are regulated"—prohibits a public utility from bringing a
complaint against a customer because a customer is not reg-
ulated by the PUC. Roats contended that its complaint was
predicated on subsection (5), not subsection (1)—that is, that
the PUC had jurisdiction in that Roats's complaint was a
complaint by a public utility "as to any matter affecting its
own rates or service." The administrative law judge (ALJ)
agreed and denied petitioner's motion to dismiss.

Petitioner appealed to the PUC. The PUC agreed
with the ALJ's prior determination and concluded that
Roats's complaint, as a request to require payment of charges
set forth in its tariffs governing water utility service, is
"clearly within the jurisdiction of the [PUC]." The PUC ulti-
mately granted Roats's complaint, in part, and concluded
that petitioner is obligated to pay certain RDCs in accordance
with the water service tariffs approved for Roats.

■     On judicial review, petitioner continues to assert
that the PUC lacked jurisdiction to consider Roats's com-
plaint. In response, Roats and the PUC[3] emphasize that,
given its unqualified "notwithstanding" language, ORS
756.500(5) is not subject to any limitation derived from ORS
756.500(1). For the reasons that follow, we conclude that,
under ORS 756.500(5), the PUC did have jurisdiction with
respect to Roats's complaint against its own customer.

Whether the PUC had jurisdiction over Roats's
complaint hinges on the proper construction and appli-
cation of ORS 756.500. We review the PUC's interpretation of
applicable statutes in accordance with the principles of
*Springfield Education Assn. v. School Dist.*, 290 Or 217, 621
P2d 547 (1980). That is, unless the statutory terms at issue

---

[3] The PUC is an additional respondent on judicial review.

are delegative in nature, we review for errors of law. *Utility Reform Project v. PUC*, 171 Or App 349, 353, 16 P3d 516 (2000). In this case, the operative statutory terms are not delegative; instead, they are inexact in nature. *See Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 681, 146 P3d 336 (2006), *rev den*, 342 Or 473 (2007) (a term is "inexact" where its meaning is "not so precise as to require no interpretation at all").

Because the operative terms are inexact, we construe ORS 756.500 according to the familiar methodology explained in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Our role in construing statutes is to ascertain and, if possible, give effect to the legislature's intent in enacting the statute. In doing so, we begin by examining the statutory text in context and, then, if the statute remains subject to more than one plausible interpretation, we consider, in turn, the statute's legislative history and other aids to construction. *Id.*

We return to the text of the operative statutory provisions. In contending that ORS 756.500 does not authorize complaints against unregulated customers, petitioner invokes subsection (1) of that statute, which provides, in part:

> "Any person may file a complaint before the Public Utility Commission, or the commission may, on the commission's own initiative, file such complaint. *The complaint shall be against any person whose business or activities are regulated* by some one or more of the statutes, jurisdiction for the enforcement or regulation of which is conferred upon the commission."

(Emphasis added.) Petitioner asserts that Roats may not permissibly file its complaint against petitioner because petitioner is not a "person whose business or activities are regulated" by the PUC.

The PUC and Roats respond that petitioner's focus on subsection (1) is inapposite—and, instead, the PUC properly exercised jurisdiction under subsection (5), which provides, in part:

> *"Notwithstanding subsection (1) of this section*, any public utility * * * may make complaint *as to any matter affecting its own rates or service with like effect as though made by any other person*, by filing an application, petition or complaint with the commission."

(Emphasis added.)

Whether the PUC properly exercised jurisdiction under ORS 756.500 turns on the proper construction of subsection (5)—and, particularly, its proper interrelationship with subsection (1). The critical—indeed, ultimately dispositive—language in determining that relationship introduces subsection (5): *"Notwithstanding subsection (1) of this section * * *."* (Emphasis added.) The function of a "notwithstanding" clause is straightforward. It operates to except the remainder of the sentence containing the clause from the provisions of law referenced in the clause. *O'Mara v. Douglas County*, 318 Or 72, 76, 862 P2d 499 (1993). That is, the function of the introductory "notwithstanding" clause of subsection (5) is to provide that that subsection is not subject to the terms, and qualifications, of subsection (1). Thus, the limitations of subsection (1)—particularly including the condition that a complaint be against "any person whose business or activities" are subject to PUC regulation—do not apply to a complaint filed by a public utility under subsection (5).

Petitioner contends, nonetheless, that subsection (5) implicitly or indirectly incorporates the limitation in subsection (1) that the "complaint shall be against any person whose business or activities are regulated." In support of that contention, petitioner points to the phrase in subsection (5) that public utilities may make complaint "with *like effect* as though made by any other person." (Emphasis added.) Petitioner's argument, as we understand it, is that, because a complaint pursuant to subsection (1) can yield relief only against a "person whose business or activities" are subject to PUC regulation, a complaint under subsection (5), to have "like effect," must be similarly limited.

We reject that argument for a variety of reasons. First, it would "bootstrap" into subsection (5) a condition of subsection (1), which would violate the explicit unqualified "[n]otwithstanding subsection (1)" language of subsection (5).

Second, petitioner's proposed construction of "effect"—a term not defined in ORS 756.500 or contextually related statutes—does not comport with the common understanding of that term. *See State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense.").

"Effect" is a noun defined as "something that is produced by an agent or cause : something that follows immediately from an antecedent : a resultant condition : RESULT, OUTCOME * * *." *Webster's Third New Int'l Dictionary* 724 (unabridged ed 2002). "Like," as employed here, means "the same or nearly the same (as in nature, appearance, or quantity) * * * : equal or nearly equal * * * : CORRESPONDING * * * : IDENTICAL, INDISTINGUISHABLE * * * : SIMILAR * * *." *Webster's* at 1310. Thus, the ordinary meaning of the term "effect" generally relates to the *consequence* of filing a complaint, including the nature of relief that can be obtained, and not to the identities of the parties. That is, "effect" pertains to the "what" and not the "who" (or the "whom"). The *identity* of the complainant, whether a public utility or any other person, has no bearing on the *result* or *outcome* available to the complainant.

Third, petitioner's understanding of the meaning and function of "with like effect" is contradicted by the historical contextual development of ORS 756.500 and its antecedents. *See Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) (historical changes in the text of a statute provide context for the interpretation of the version at issue). Most significantly, as described immediately below, subsections (1) and (5) of ORS 756.500, while now coexisting within the same statute, originally derived from different statutes, which the legislature enacted 28 years apart. Further, the two were not included in the same statute until more than 30 years after the enactment of the latter.

The historical antecedent of subsection (5)—containing the phrase "with like effect"—originated in 1911:

"Any public utility may make complaint as to any matter affecting its own product or service *with like effect* as

though made by any mercantile, agricultural or manufacturing society, body politic or municipal organization or by any ten persons, firms, corporations or associations."

Or Laws 1911, ch 279, § 46 (emphasis added).

As part of the same statutory scheme, the 1911 legislature enacted the following provision, which provided, in part:

"Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by any three persons, firms, corporations or associations * * * the Commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient."

Or Laws 1911, ch 279, § 41.

Thus, when the legislature originally enacted the historical counterpart of ORS 756.500(5), the phrase "with like effect" operated to give complaints filed *by* public utilities the same effect as though filed by persons entitled to make complaints *against* public utilities. That is, complaints filed *by* public utilities triggered the same investigatory procedure by the PUC as complaints filed *against* public utilities.

In 1953, those two provisions of the 1911 legislation were combined into *former* ORS 757.505 (1953), *repealed by* Or Laws 1971, ch 655, § 250. That statute stated, in part:

"(1) The commissioner shall, with or without notice, make such investigation as he deems necessary or convenient, upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society, body politic or municipal organization or three other persons * * *.

"* * * * *

"(4) Any public utility may make complaint as to any matter affecting its own product or service *with like effect* as though made by any society, organization or group listed in subsection (1) of this section."

(Emphasis added.)

In *former* ORS 757.505(4), the legislature directly referred to *former* ORS 757.505(1), thereby making it clear that the legislature intended to relate the two subsections. Thus, after 1953, the phrase "with like effect" continued to carry the same meaning—that complaints made *by* public utilities were to be given the same "effect"—*i.e.*, result or outcome—as though filed by a person entitled to make a complaint *against* a public utility.

In contrast to the historical evolution of the present ORS 756.500(5), the historical antecedent of the present ORS 756.500(1) was not enacted until 1939 and as part of a separate act—the Uniform Practice Act of the Public Utilities Commissioner. *See* Or Laws 1939, ch 320, § 4. That statute stated, in part:

> "Any person may file a complaint before the commissioner * * *. Such complaint shall be against such person whose business or activities are regulated by some one or more of the acts, jurisdiction for the enforcement or regulation whereof is conferred upon the commissioner."

OCLA §§ 112-4, 114 (1940). That statute was eventually renumbered as *former* ORS 756.520 (1953), *renumbered as* ORS 756.500 (1971).[4]

Thus, the historical counterparts to present subsection (1) and subsection (5) were separate and distinct statutes until 1971, when the legislature repealed *former* ORS 757.505, *see* Or Laws 1971, ch 655, § 250, and amended *former* ORS 756.520 by adding, as subsection (5) of that statute, what is now essentially ORS 756.500(5).[5] *See* Or Laws 1971, ch 655, § 37. The legislature then renumbered the reconfigured *former* ORS 756.520 as ORS 756.500.[6]

---

[4] In 1953, *former* ORS 756.520 provided, in relevant part:

"Any person may file a complaint before the commissioner * * *. The complaint shall be against any person whose business or activities are regulated by some one or more of the statutes, jurisdiction for the enforcement or regulation of which is conferred upon the commissioner."

[5] Although subsection (5) has been amended since 1971, *see* Or Laws 1995, ch 733, § 68; Or Laws 1987, ch 447, § 91, those amendments are not material to our analysis.

[6] The sequence of legislative repeal, amendment, and renumbering in 1971 may be confusing. To recapitulate, in 1971 the legislature: (1) repealed *former* ORS

Given that historical context, it is patent that, when the legislature added subsection (5) to *former* ORS 756.520, it did not intend the "with like effect" language to incorporate the constraint prescribed in *former* ORS 756.520(1) that the "complaint shall be against any person whose business or activities are regulated." That is so because the phrase "with like effect" existed in a separate and distinct statute for 28 years—from 1911 to 1939—before the legislature ever enacted the original antecedent of *former* ORS 756.520(1). Further, from 1911 until the repeal of *former* ORS 757.505 and the creation of *former* ORS 756.520(5) in 1971, the phrase "with like effect" in the historic antecedents of ORS 756.500(5) did not exist within the same statute as the requirement that the "complaint shall be against any person whose business or activities are regulated." Accordingly, when subsection (5) was added to *former* ORS 756.520 in 1971, its "with like effect" language continued to carry the same meaning it had for the previous 60 years—*viz.*, that a complaint filed by a public utility is entitled to the same result or outcome as though filed by a person entitled to file a complaint *against* a public utility. Nothing more; nothing less.

Finally, petitioner's proposed construction of the phrase "with like effect" would render subsection (5) superfluous. If the constraints of subsection (1) were imported into subsection (5)—limiting public utilities to filing complaints against persons whose business or activities are regulated—any complaint authorized under subsection (5) would already be authorized pursuant to subsection (1). That is, subsection (5) would have no independent effect because it would merely authorize a subset of complaints already authorized under subsection (1). We reject that construction. *See State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage.").

In sum, the terms of ORS 756.500(1)—including the jurisdictional limitation that complaints "shall be against

757.505; (2) amended *former* ORS 756.520 by adding, as subsection (5), what is now essentially the present ORS 756.500(5); and (3) renumbered *former* ORS 756.520, as amended, to ORS 756.500.

any person whose business or activities are regulated"—do not apply when the PUC exercises jurisdiction over a complaint "as to any matter affecting its own rates or service" filed by a public utility pursuant to ORS 756.500(5). Accordingly, the PUC has jurisdiction with respect to such complaints, including Roats's complaint in this matter.[7]

Affirmed.

---

[7] We note that the PUC has previously exercised jurisdiction over an unregulated customer pursuant to ORS 756.500(5). *See* PUC Order No. 88-1287. In Order No. 88-1287, the PUC exercised jurisdiction pursuant to ORS 756.500(5) over a complaint by a public utility against an unregulated customer for nonpayment of service billings.