Argued and submitted December 4, 2020, affirmed July 21, 2021

In the Matter of the Compensation of
William G. Kalenius IV.

William G. KALENIUS IV,
*Petitioner,*

*v.*

CITY OF CORVALLIS,
*Respondent.*

Workers' Compensation Board
1801404, 1900766; A173085

495 P3d 209

Claimant, a firefighter, seeks judicial review of an order of the Workers' Compensation Board upholding SAIF's denial of his claim for treatment of a stroke. He contends that the board erred in determining his claim was not subject to the firefighters' presumption, ORS 656.802(4), because the stroke was not "cardiovascular-renal disease," within the meaning of that provision. *Held*: Substantial evidence supports the board's determination that claimant does not suffer from "cardiovascular-renal disease" under ORS 656.802(4), as that condition has been defined by the Court of Appeals in *City of Eugene v. McCann*, 248 Or App 527, 529, 273 P3d 348 (2012). Substantial evidence also supports the board's determination that claimant's work as a firefighter was not a material contributing cause of the stroke. The court therefore affirmed the board's order determining that claimant's stroke is not compensable.

Affirmed.

Nelson R. Hall argued the cause for petitioner. Also on the briefs was Bennett Hartman, LLP.

Brad Garber argued the cause for respondent. On the brief were Howard R. Nielsen and Tolleson Conratt Nielsen Maher & Replogle.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Affirmed.

**ARMSTRONG, P. J.**

Claimant, a firefighter, seeks judicial review of an order of the Workers' Compensation Board upholding SAIF's denial of his claim for treatment of a stroke. For the reasons explained below, we conclude that the board did not err, and we therefore affirm.

Claimant had a stroke on the job. He filed an occupational-disease claim with employer and sought to invoke the firefighters' presumption, ORS 656.802(4), which provides, in part:

> "Death, disability, or impairment of health of firefighters of any political division who have completed five or more years of employment as firefighters, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as firefighters is an 'occupational disease.' Any condition or impairment of health arising under this subsection shall be presumed to result from a firefighter's employment."

The firefighters' presumption allows a firefighter to establish the compensability of "cardiovascular-renal disease" as an occupational disease without presenting direct evidence of causation by the employment. *City of Eugene v. McCann*, 248 Or App 527, 529, 273 P3d 348 (2012). SAIF denied claimant's claim, and claimant requested a hearing. At the hearing, the question before the administrative law judge (ALJ) was whether claimant's stroke constituted "cardiovascular-renal disease."

The medical evidence at the hearing consisted primarily of three opinions. Dr. Semler, a cardiologist, explained that claimant's echocardiogram did not reveal that claimant has cardiovascular disease or any of the conditions that might predispose him to a stroke. Semler said that the cause of claimant's stroke was unknown and that the echocardiogram "showed no evidence of cardiomyopathy or enlargement of the heart or other reasons for him to have a stroke." Semler noted that claimant has a congenital condition known as "patent foramen ovale," which is known to be "a probable pathway for a blood clot to go from the right side of the body and travel through the heart into the left

ventrical, out the aorta, and up into the cerebral arteries and cause a stroke." He theorized that a possible cause of the stroke was the development of a blood clot traveling from the lower body to the right atrium into the left atrium and up into the cerebral arteries.

Dr. Kuehl offered the opinion that claimant suffered an "ischemic-type stroke" of "uncertain etiology." Kuehl explained, further, that claimant does not have any of the typical risk factors for stroke but noted claimant's "patent foramen ovale." He explained that the literature recognizes that firefighting as a profession is a risk factor for stroke and expressed the opinion that "stroke" is among the conditions that constitute "cardiovascular disease." Kuehl disagreed with Semler's view that claimant's work as a firefighter did not contribute to his stroke.

Dr. Swangard also examined claimant. Swangard did not find any evidence that claimant suffers from cardiovascular disease. In his opinion, the most probable mechanism of claimant's stroke was the patent foramen ovale, which allowed a clot of unknown origin to cross over from the right atrium to the left atrium of the heart into the arterial outflow and then to claimant's cerebral arteries, where it caused a disruption of blood flow to the brain and a stroke. Upon being provided the definition of "cardiovascular-renal disease" from *McCann*, 248 Or App at 537, as "a physical impairment of the heart or blood vessels, gradual in onset, that interrupts or modifies the performance of the body's vital functions," Swangard opined that claimant had not experienced an impairment of the heart or blood vessels that was gradual in onset and that claimant's stroke was sudden in onset and not a result of cardiovascular disease. Swangard was unable to find any association between claimant's work as a firefighter and his stroke.

Upon being provided the definition of cardiovascular disease from *McCann*, Semler concurred in Swangard's opinion. He further noted that imaging did not show any sign of cardiovascular disease. Both Semler and Swangard appeared to attribute the cause of the stroke to claimant's patent foramen ovale, not cardiovascular disease.

Claimant did not dispute the applicability of *McCann*'s definition of "cardiovascular disease." Rather, he contended that the stroke itself, which he contended caused an impairment of claimant's vascular system, was cardiovascular disease.

In affirming the administrative law judge, the board found persuasive the opinions of Semler and Swangard that claimant does not have cardiovascular disease, as that condition has been defined in *McCann*. It therefore rejected claimant's contention that the firefighters' presumption was applicable. The board further concluded that claimant had failed to establish that his work as a firefighter was a material contributing cause of the stroke.

On judicial review, claimant does not dispute the applicability of *McCann*'s definition of "cardiovascular disease." But claimant continues to assert that his stroke *was* cardiovascular disease, because it constituted a "physical impairment of the blood vessels" that was gradual in onset. Claimant cites the uncontested medical opinion concerning the presumed pathology of the stroke, *viz.*, a blood clot that travelled through claimant's vascular system from his lower extremities to his brain, where it impaired the function of the blood vessels by blocking the passage of blood to portions of his brain. In claimant's view, it is fundamentally inconsistent with that pathology to conclude that claimant's condition was "sudden," or that it did not constitute cardiovascular disease. Claimant contends that the board's acceptance of Semler's and Swangard's opinions that claimant's stroke was not cardiovascular disease and was "sudden" is not supported by substantial reason.

We reject the contention. As a preliminary matter, we note that *McCann*'s definition of "cardiovascular disease" for purposes of ORS 656.802(4), including the requirement that it be "gradual in onset," has not been challenged.[1] And, contrary to claimant's contention, the theorized mechanism or pathology of the stroke—as a blood clot that travelled

---

[1] We are not prepared to conclude that our considered opinion in that case that an occupational disease must be gradual in onset was plainly wrong. *See State v. Civil*, 283 Or App 395, 388 P3d 1185 (2017) (explaining standards for establishing that prior case was plainly wrong and should be overturned).

to claimant's brain from claimant's lower body—does not establish that the source of the clot itself was cardiovascular disease that was gradual in onset. The experts did not know where claimant's clot formed or when or why it formed. There is nothing that connects the clot or the stroke to cardiovascular disease other than Kuehl's opinion that a stroke is cardiovascular disease. There was no explanation for that statement, and the board rejected it as conclusory. In the absence of evidence of cardiovascular disease, we conclude that the board did not err in determining that the firefighters' presumption does not apply.

Contrary to claimant's contention, our conclusion is not inconsistent with *McCann*. There, the claimant firefighter sought to apply the presumption of ORS 656.802(4) in determining the compensability of treatment for "autonomic dysfunction," a disorder of the autonomic nervous system that caused the claimant to have a slow heartbeat. The employer denied the claim. The medical evidence on which the board relied in overturning the employer's denial opined that the claimant's condition was not a cardiovascular disease. Physicians, Semler among them, opined that the claimant had a strong heart with no sign of heart or cardiovascular disease. But the board nonetheless determined that the condition was subject to the firefighter presumption. In determining that the claimant's condition was a "cardiovascular disease," the board defined "cardiovascular disease" as "an impairment of the body or any of its components that interrupts or modifies the heart and blood vessels." 248 Or App at 529. The board found that the claimant's condition was a "cardiovascular-renal disease" for purposes of the firefighters' presumption, because it modified or interrupted the performance and function of her heart and vascular system. *Id.* at 533.

In reversing the board, we agreed with the employer that the board's definition of cardiovascular disease was too broad, because it "erroneously conflate[ed] symptoms and diseases, thus expanding the definition of 'cardiovascular-renal disease' to encompass more than the legislature intended." *Id.* at 530-31. We noted, citing *Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 681, 146 P3d 336 (2006), *rev den*, 342 Or 473 (2007) (construing the

statutory term "arthritis or an arthritic condition"), that we were required to determine the meaning of the statutory term as a matter of law, not as a question of fact. *McCann*, 248 Or App at 533.

We devoted considerable analysis in *McCann* to determining the legal meaning of "cardiovascular-renal disease." Because the statutes did not provide a meaning for the terms "cardiovascular" and "disease," we turned to dictionaries, 248 Or App at 534-37, as well as statutory context. We reasoned that the statutory context required that the conclusion that "the heart cannot be said to be 'diseased' simply because its function, although not its physical health, has been affected by some underlying ailment." We pointed out "the logical consequences of defining 'cardiovascular-renal disease' so broadly that it encompasses all conditions that affect the heart's function, but not the physical structure of the heart itself." *Id.* at 537. A "disease," we concluded, must be an impairment of the physical status of the body or one of its parts that interrupts or modifies the performance of the vital functions." *Id.* at 536.

We reasoned, further, that, under our case law, a "disease" is gradual, not sudden in onset. *Id.* at 537. We therefore defined "cardiovascular disease" as "a physical impairment of the heart or blood vessels, gradual in onset, that interrupts or modifies the performance of the body's vital functions." *Id.*

The upshot of our holding in *McCann*, for purposes of this case, is that a "disease" must cause an impairment of the physical structure of the blood vessels and it must be gradual in onset. There is no evidence that claimant's stroke meets either of those requirements. Substantial evidence supports the board's finding that claimant does not have cardiovascular disease as we have defined that condition in *McCann*. Thus, the board correctly held that the firefighters' presumption is not applicable.

The board further found that claimant's stroke should be evaluated as an injury rather than an occupational disease and that claimant's work as a firefighter was not a material contributing cause of the stroke. The

board's findings are supported by substantial evidence, and we therefore affirm the board's order determining that the stroke is not compensable.

Affirmed.