Submitted on record and briefs November 4, OAR 291-105-0015(15) and OAR 291-105-0066(5), (6), and (9)(d) held valid December 14, 2005

JACOB HENRY BARRETT,
*Petitioner,*

*v.*

DEPARTMENT OF CORRECTIONS,
*Respondent.*

A125875

125 P3d 98

Jacob Henry Barrett filed the briefs *pro se.*

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

### HASELTON, P. J.

Petitioner seeks judicial review of two administrative rules of the Department of Corrections (DOC) pursuant to ORS 183.400. Petitioner argues that DOC lacked statutory authority to enact OAR 291-105-0010(15)[1] and OAR 291-105-0066(5), (6), and (9)(d),[2] concerning prison disciplinary fines, and that the rules violate various constitutional provisions. We reject without discussion petitioner's constitutional arguments, and write only to address his argument that the rules lack statutory authority. As explained below, we hold that the rules are valid.

■ OAR 291-105-0010(15) defines "[f]ine" as a "monetary sanction imposed in accordance with" OAR 291-105-0066. OAR 291-105-0066 and the exhibits incorporated by reference therein permit DOC to impose disciplinary sanctions for various types of misconduct, and set forth a grid showing the maximum fines, segregation, and loss of privileges that inmates may be assessed for the various types of misconduct. Petitioner asserts that those rules lack statutory authority because DOC's sole authority for assessing fines

---

[1] OAR 291-105-0010(15) defines a "[f]ine" as "[a] monetary sanction imposed in accordance with the Department of Corrections rule on Prohibited Inmate Conduct and Processing Disciplinary Actions. Inmate fines shall be deposited in the Department of Corrections Inmate Welfare Fund as confiscated funds."

[2] OAR 291-105-0066 provides, in part:

"(5) The Department's rule on Prohibited Inmate Conduct and Processing Disciplinary Actions contains two inmate disciplinary grids. One grid governs inmate disciplinary action for major violations (Exhibit 1). One grid governs inmate disciplinary action for minor violations (Exhibit 2).

"(6) Each of the inmate disciplinary grids shall outline the available sanctions within each box, which includes fines, segregation time and the loss of privileges.

"* * * * *

"(9) Limitations on the Length of Confinement in Disciplinary Segregation for Rule Violations:

"* * * * *

"(d) New Violations Committed While Assigned to Intensive Management Unit/IMU Status: An inmate who commits a new rule violation while assigned to the Intensive Management Unit (IMU), or while assigned to IMU status, shall not be ordered to serve a disciplinary segregation sanction for the violation. The inmate shall be subject to the range of additional sanctions described in OAR 291-105-0069 & OAR 291-105-0071, including but not limited to fines and loss of privileges."

against inmates derives from ORS 421.125, which provides in part that DOC shall adopt rules to "[a]ssess the inmate for damages or destruction caused by willful misconduct of the inmate." ORS 421.125(2)(e). Petitioner acknowledges that we upheld a similar DOC rule in *Clark v. Schumacher*, 103 Or App 1, 795 P2d 1093 (1990), but argues that *Clark* is not controlling here because it did not address whether ORS 421.125 limited DOC's authority.

In *Clark*, we upheld a rule allowing imposition of fines for misconduct, rejecting an argument that no statutory authority existed for such a rule:

> "ORS 423.075(5)(d) allows the director of the Department of Corrections to 'adopt rules for the government and administration of the department.' The only statutory limitations on sanctions for rule violations are that they be 'appropriate' and not 'inflict any cruel and unusual punishment.' ORS 421.105(1). We conclude that the 'general policy' of the statutory framework permits the imposition of fines as disciplinary sanctions."

103 Or App at 5-6 (footnote omitted). Thus, in *Clark*, we concluded that the authorization under ORS 421.105(1) for imposition of "appropriate punishment"[3] as a means of enforcing institutional discipline encompassed authority to impose disciplinary fines. That construction accords with the plain meaning of "punishment." *See Webster's Third New Int'l Dictionary* 1843 (unabridged ed 2002) (defining "punishment" as, *inter alia*, "the infliction of a penalty").

Petitioner is correct that, in *Clark*, we did not consider whether ORS 421.125 contains a statutory limitation on sanctions for rule violations that otherwise would be authorized by ORS 421.105. We therefore address that question. As noted, ORS 421.125(2)(e) specifically authorizes DOC to assess inmates for damage or destruction caused by willful misconduct. Petitioner asserts that that statute

---

[3] ORS 421.105(1) provides:

"The superintendent may enforce obedience to the rules for the government of the inmates in the institution under the supervision of the superintendent by appropriate punishment but neither the superintendent nor any other prison official or employee may strike or inflict physical violence except in self-defense, or inflict any cruel or unusual punishment."

describes the only circumstance in which an inmate may face a financial penalty due to misconduct. We disagree.

■ To determine the intent of the legislature in enacting a statute, we look to the text of the statute in context, giving words of common usage "their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). ORS 421.125(2)(e) concerns recovery of money from inmates "for damages" caused by willful misconduct. "Damages" has a well-understood common meaning: "the estimated reparation in money for detriment or injury sustained : compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right[.]" *Webster's* at 571. Damages, therefore, concern reparation or restitution. A "fine," however, as used in the present context, is "the monetary *penalty* imposed for infraction of a rule or obligation." *Id.* at 852 (emphasis added). Thus, we conclude that statutory text pertaining to "damages" does not, on its face, appear to pertain to fines, as the concepts involved are distinct from one another.

That conclusion comports with ORS 421.068(1), on which DOC specifically relied in enacting the challenged rule. ORS 421.068(1) provides, in part:

"Revenues, less operating expenses, from the following sources shall be deposited into an account established by the Department of Corrections to provide money to enhance inmate activities and programs including education programs:

"* * * * *

"(d) Funds confiscated from the inmates under existing disciplinary procedures[.]"[4]

Thus, that statute explicitly contemplates that "funds" may be confiscated from inmates pursuant to "disciplinary procedures."[5]

---

[4] ORS 421.068(1) was enacted after our decision in *Clark*. Or Laws 1991, ch 663, § 1.

[5] In addition, ORS 421.068(1) directs that those monies will be used to "enhance" various inmate programs. If the legislature's reference to "funds confiscated" in ORS 421.068(1) had been merely to "damages" collected from inmates pursuant to ORS 421.125(2)(e), it seems unlikely that the legislature would have directed that those funds be used for inmate activities and programs rather than

In sum, we conclude that nothing in ORS 421.125 calls into question our conclusion in *Clark* that ORS 421.105(1), which authorizes DOC to enforce obedience to institutional rules "by appropriate punishment," authorizes the imposition of fines for inmate misconduct.

OAR 291-105-0015(15) and OAR 291-105-0066(5), (6), and (9)(d) held valid.

---

for repair and replacement of whatever was damaged in the course of the misconduct.