Argued and submitted May 7, reversed and remanded for reconsideration
June 18, 2008

Steven EDWARDS,
*Respondent,*

*v.*

RIVERDALE SCHOOL DISTRICT,
*Petitioner,*

*and*

FAIR DISMISSAL APPEALS BOARD,
*Respondent.*

Fair Dismissal Appeals Board
FDA064; A134931

188 P3d 317

Nancy Hungerford argued the cause for petitioner. With her on the briefs were Jennifer L. Hungerford and The Hungerford Law Firm.

James M. Brown argued the cause and filed the brief for respondent Steven Edwards.

Richard Wasserman waived appearance for respondent Fair Dismissal Appeals Board.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Petitioner Riverdale School District dismissed respondent Edwards from his position as athletic director. Edwards appealed the decision to the Fair Dismissal Appeals Board (FDAB or board), contending that the district failed to follow procedures that apply to the dismissal of teachers. The district moved to dismiss the appeal on the ground that Edwards was not, in fact, a teacher but, instead, was an administrator who is not subject to the procedures that apply to the dismissal of teachers. Following a hearing, FDAB concluded that Edwards was indeed a teacher entitled to the procedures that apply to teachers. The district petitions for judicial review, contending that FDAB erred both in its interpretation of the relevant statutes that define who is and is not an "administrator" and in its application of that interpretation to the undisputed facts of this case. We agree with the district that FDAB erred in its interpretation of the relevant statutes and therefore reverse and remand for reconsideration.

The relevant facts are not in dispute. Edwards worked for the district in various teaching positions from 2002 to 2005. He possessed a teaching license, but did not possess an administrator's license. In May 2005, the district employed Edwards as "PE Health Instructor/Athletic Director" for the 2005-06 school year. The district classified Edwards's responsibilities as working three quarters of the time as an athletic director and one quarter of the time as a teacher. As a result, Edwards taught one class per term.

Edwards's responsibilities as athletic director included attending games and supervising coaches at the district's single elementary school and its single high school. He was also responsible for organizing the coach selection committee and for recommending coaches for hire to the principals. In addition, Edwards had a role in monitoring the athletic budget, which included recommending the level of student fees, coaches' salaries, and equipment expenses.

In June 2006, the district notified Edwards that it was dismissing him later that month. The district regarded him as an administrator who was on probationary status. As

a result, it made no attempt to follow the procedures that apply to the dismissal of teachers. Edwards appealed the dismissal to the board, contending that he was a teacher, entitled to the dismissal procedures that apply to teachers. The district moved to dismiss the appeal, arguing that Edwards was a probationary administrator, not a teacher. According to the district, FDAB lacks jurisdiction over the dismissals of probationary administrators. The parties agreed that, if the board concluded that Edwards was, in fact, a teacher, the proper disposition of the appeal was an order of reinstatement.

The board denied the district's motion to dismiss and ordered the district to reinstate Edwards. The board reasoned that Edwards was not a probationary administrator because he did not fall within the statutory definition of "administrator." According to the board, under ORS 342.815(1), an "administrator" includes a teacher the majority of whose work is devoted to service as a "supervisor, principal, vice principal or director of a department or the equivalent." There is no debate, the board stated, that Edwards was a "teacher." As there also was no contention that Edwards was a supervisor, principal, or vice principal, the board continued, the sole remaining question was whether he was a "director of a department or the equivalent." The board resolved that question on the basis of a dictionary definition of the term "director":

> "The dictionary definition of director provides some guidance. A 'director' is defined as: '**1:** one that directs as **a:** the head or chief of an organized occupational group.' A chief is '1[:] accorded highest rank, office, or rating * * * **:** superior in authority, power, or influence.'
>
> "It is thus clear that to be 'director' of a department the individual must have the highest rank of authority to make decisions about the department. Appellant did not have that authority in his position as the Athletic Director. While Appellant supervised coaches, he did not do performance evaluations. Similarly, Appellant monitored and provided recommendations about the athletic budget, but did not have the final authority in signing off on the budget. Appellant was also involved in recommending whom to

hire, but again did not have final authority in making those decisions."

(Boldface and ellipsis in original.)

On review, the district contends that the board erred in construing the statutory term "director of a department or the equivalent" to apply only to a single person who has the highest rank of authority to make decisions about the department. According to the district, the board mistakenly relied solely on a cherry-picked definition of the term in isolation and without reference to other contextual clues as to the meaning that the legislature most likely intended. Edwards responds that the board's decision is consistent with Oregon appellate court decisions in which the meaning of statutory terms was determined solely by reference to dictionary definitions.

■■ The issue thus framed is one of statutory construction. Under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), the goal of statutory construction is to ascertain, if possible, the meaning of the statute most likely intended by the legislature that enacted it by examining its text in context and, if necessary, legislative history and other aids to construction. When we review an administrative agency's interpretation of a statute, some measure of deference to that interpretation may be appropriate, depending on the nature of the terms involved. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353-54, 15 P3d 29 (2000). In this case, however, the term "director of a department or the equivalent" is an inexact term, and, as such, we review its interpretation as a matter of law, in accordance with the interpretive principles set out in *PGE*, with no deference to the agency's construction. *J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 198, 131 P3d 162 (2006).

In examining the text of a statute, we ordinarily assume that the legislature intended terms be given their plain, ordinary meanings. *Haynes v. Tri-County Metro.*, 337 Or 659, 663, 103 P3d 101 (2004); *Barrett v. Dept. of Corrections*, 203 Or App 196, 199, 125 P3d 98 (2005), *rev den*, 341 Or 197 (2006). Ordinary meaning can be determined by reference to a dictionary of common usage. *State v. Murray*,

340 Or 599, 604, 136 P3d 10 (2006). A dictionary definition of ordinary meaning, however, is controlling only if there is no evidence from the statute or its relevant context that the legislature intended some other meaning to apply. *Dept. of Transportation v. Stallcup*, 341 Or 93, 99-100, 138 P3d 9 (2006); *State v. Pine*, 336 Or 194, 202-03, 82 P3d 130 (2003).

With the foregoing principles in mind, we turn to the statute at issue. What used to be known as the "Fair Dismissal Law," and now is known as the "Accountability for Schools for the 21st Century Law," ORS 342.805 to 342.937, generally sets out a uniform statewide process for the dismissal of teachers and administrators. Depending on whether an individual is a "teacher" (and, in turn, whether a teacher is classified as "probationary" or "contract") or an "administrator," different processes apply. *Compare* ORS 342.835 (describing process applicable to dismissal of probationary teachers) *with* ORS 342.845 (describing process applicable to dismissal of contract teachers and administrators).

An administrator is required to serve a probationary period not exceeding three years. ORS 342.845(5)(a). Upon completion of the probationary period, the administrator is employed under a three-year contract. *Id.* If, during that contract period, an administrator is dismissed, he or she may appeal to FDAB. *Id.* However, there is no statutory provision for a probationary administrator to appeal a dismissal to FDAB. The question in this case is whether Edwards was an "administrator." It appears that there is no debate that, if he was an administrator, he had not yet worked long enough to obtain contract status and, as a result, FDAB would lack jurisdiction to hear his appeal. We turn, then, to the meaning of the term "administrator."

■ The statute provides that, notwithstanding other definitions of the term in ORS chapter 342, " 'administrator' includes any teacher the majority of whose employed time is devoted to service as a supervisor, principal, vice principal or director of a department or the equivalent." ORS 342.815(1). At the outset, we note that the statute does not actually specify what the term "administrator" *means*. It lists several different types of work that are *included* within the term. *See*

*generally State v. Haynes*, 149 Or App 73, 76-77, 942 P2d 295 (1997), *rev den*, 328 Or 275 (1999) (discussing difference between statutes that specify what a term "means" and those that specify merely what the term "includes"). The difference is important, for it explains a fundamental flaw in the board's reasoning.

The board reasoned that, if Edwards is not a supervisor, principal, vice principal, or director, then Edwards cannot be an "administrator." That process-of-elimination approach to the statute works, however, only if the list that the statute enumerates is an exclusive one in the first place. Nothing in ORS 342.815(1) suggests that. To the contrary, the statute expressly states that the listed positions are merely "include[d]" within the term "administrator." Moreover, the statute expressly provides that among the positions included within the term "administrator" is a "director of a department *or the equivalent*," demonstrating the open-ended nature of the enumeration. *Id.* (emphasis added).

Turning to the meaning of "director" for the purpose of the phrase "director of a department," *Webster's Third New Int'l Dictionary* 641 (unabridged ed 2002) lists a number of different definitions, the most relevant for our purposes being: "**1 :** one that directs: as **a :** the head or chief of an organized occupational group (as a bureau, foundation, institute, school)." As we have noted, the board seized on that definition, in particular, the reference to a "chief." The board then determined the dictionary definition of that term, finding that it refers to the person holding the "highest" office or ranking. From that, the board concluded that, to qualify as an "administrator," an individual "must have the highest rank of authority to make decisions about the department."

The problem with the board's use of the foregoing dictionary definition is that it confuses the actual definition of the term with various examples of it. The actual definition of the term "director" is "one that directs." That definition is followed by a number of what are known as "coordinate sub-senses" that, in this case, function as *examples* of the definition that precedes them. *See Webster's* at 17a, note 12.2.1

("The lightface colon * * * indicates that the definition imme-diately preceding it binds together or subsumes the coordi-nate subsenses that follow it[.]"). Particularly when the defi-nition is followed by the word "as," the listed subsenses that follow "indicate[ ] that the subsenses following [it] are typical or significant examples *which are not exhaustive.*" *Id.* at 17a, note 12.2.2 (emphasis added).

Thus, in this case, the fact that Edwards did not qualify as a "chief," as that term is defined in the dictionary, did not establish that he was not a "director." It simply estab-lished that he did not qualify as one of the examples of posi-tions that can qualify as a director. To establish whether Edwards was a "director" requires that we go back to the actual definition, *viz.*, "one that directs."

■ The dictionary provides nearly 20 column inches of definitions of the term "direct." As far as we can tell, however, only the following portions of the definition seem relevant to the meaning of the term "director" as it is used in ORS 342.815(1):

> "**4 :** to regulate the activities or course of: **a :** to guide and supervise ‹*~ed* the floor strategy in the House of Represen-tatives› ‹the archeologist *~ing* the excavations›; *specif* **:** to carry out the organizing, energizing, and supervising of esp. in an authoritative capacity ‹*~ed* the building and arm-ing of an underground network› ‹not only public propa-ganda, but also cultural infiltration, is *~ed* from the same source—A.T. Bouscaren› **b :** ADMINISTER, CONDUCT ‹ably *~ed* music and language departments› ‹while in office he *~ed* vigorous prosecutions of racketeers› * * * **d :** to assist by giving advice, instruction, and supervision ‹the major professor *~s* graduate students' thesis research›[.]"

*Webster's* at 640 (capitalization and boldface in original).

In that light, it seems clear that, while an individual who is a "head or chief" of an occupational group may be a "director," merely because he or she is *not* such a head or chief does not mean that he or she is *not* a director. (Among other things, such reasoning relies on the logical fallacy of denying the antecedent.) A director, in ordinary usage, more gener-ally refers to one who "regulate[s] the activities or course of,"

one who "administer[s]," and one who "assist[s] by giving advice, instruction, and supervision."

That, at least, is the ordinary meaning of the term. The question is whether there is any indication in the statute or its relevant context that the legislature intended the term to have some other meaning. *Stallcup*, 341 Or at 99-100. We find no such indication from the wording of ORS 342.815(1) or any other provision of the dismissal statute.

We conclude that the board erred in interpreting the term "director of a department or the equivalent," as it is used in ORS 342.815(1), to apply only to an individual who possesses the highest rank or degree of authority to make decisions about the department. The ordinary meaning of the term "director" more broadly embraces one who administers, regulates, or supervises the activities of a department, and there is no indication that the legislature intended to depart from that ordinary meaning. Given that the board erroneously interpreted a provision of law in its determination of jurisdiction, we remand for reconsideration under a correct interpretation of the law. ORS 183.482(8)(a)(B).

Reversed and remanded for reconsideration.