Argued and submitted November 21, 1990, affirmed July 24, 1991

In the Matter of the Compensation of
Linda A. Stevenson, Claimant.

Linda A. STEVENSON,
*Petitioner,*

*v.*

BLUE CROSS OF OREGON
and SAIF Corporation,
*Respondents.*

(87-07020, 86-15450; CA A63987)

814 P2d 185

Glen S. Shearer, Portland, argued the cause for petitioner. With him on the brief was Schouboe, Marvin & Furniss, Portland.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Claimant petitions for judicial review of a Workers' Compensation Board order that held that her tendonitis is not compensable and that denied her penalties and attorney fees on that claim. We affirm.

The Board found:

"In November, 1984, claimant began working for the employer as a staple clerk; she became a file clerk after six months. Subsequently, claimant began exhibiting a rash, red sores, itchiness, and bumps on her hands.

"On October 3, 1985, she submitted an 801 form regarding the rash and open sores on her hands. The claim referenced an August 10, 1985 date of injury or diagnosis. Dr. Cook, claimant's treating osteopath, diagnosed the condition as irritant contact dermatitis. In December 1985, SAIF accepted the claim. On May 17, 1986, claimant was released to work.

"Due to the dermatitis, claimant could no longer handle file room papers. Consequently, she transferred to the reporting desk, where she worked on a CRT and a typewriter. After three weeks, claimant experienced pain in her left elbow from typing. Claimant's dermatitis also continued.

"On May 21, 1986, claimant filed a claim for aching in her left hand, arm and shoulder, and red spots and a rash on her left hand, dating back to May 5, 1986. The 801 form listed claimant's injury or disease as tendinitis [*sic*]. On June 6, 1986, SAIF indicated on the 801 that the claim had been accepted. On that same date, 1986, SAIF sent a notice of claim acceptance to claimant for a condition of 'cellulitis/eczema; contact dermatitis.'

"On September 19, 1986, Dr. Won, D.O., became claimant's attending physician. Claimant complained of a painful neck and shoulder, elbow, and wrist (mostly on the left side). Dr. Won found chronic strain and sprain of the cervical spine, left shoulder and hand.

"On October 17, 1986, a Determination Order was issued on the 1986 claim. The medically stationary date under this claim was set at August 27, 1986.

"Another Determination Order was issued on April 29, 1987. This order referred to the 1985 claim. The medically stationary date under this claim was set at February 12, 1987.

"In March 1987, claimant returned to light duty work on a part-time basis. She experienced increased left hand pain and left work. Claimant's dermatitis condition also remained symptomatic.

"Some portion of claimant's tendinitis [*sic*] and dermatitis conditions are attributable to emotional and functional factors.

"On June 22, 1987, SAIF issued a denial regarding claimant's request for reopening of her claim for " 'irritant contact dermatitis" and "cellulitis/eczema; contact dermatitis" sustained by you on August 10, 1985, and May 15, 1987, respectively[.]' "

The Board affirmed the portion of the referee's order that denied compensation for the tendonitis. It also adopted the portion of the referee's opinion dealing with claimant's psychological condition. The referee wrote:

"[T]he report by Dr. Button simply states that there was severe functional interference in his examination of claimant's hands, and that psychiatric evaluation may be beneficial. Dr. Button diagnosed no condition, and did not relate any psychiatric problems to work. [A letter from Orthopaedic Consultants] merely says there are psychological factors interfering with claimant's physical recovery. Again, there is no indication that work had anything to do with these factors. * * * Dr. Janzer, a psychiatrist, said that claimant's problems are psychiatric in nature, and specifically said that these problems predated claimant's injury. Finally, * * * Dr. Winslow mentioned psychological problems, and said nothing regarding their relation to work. Claimant has not presented any evidence that she has any psychological condition related to her accepted injury or to her work."

Claimant contends that she presented a "prima facie case" for compensability of the tendonitis. She also appears to argue that, even without medical evidence, causation of her condition is so clear that it should be compensable as a matter of law. We review the Board's findings for substantial evidence in the whole record to support them. ORS 656.298(6); ORS 183.482(7), (8); *see Garcia v. Boise Cascade Corp.*, 309 Or 292, 296, 787 P2d 884 (1990).

The Board found the opinions of Drs. Winslow and Won ambiguous and conclusory. Winslow originally diagnosed tendonitis and cellulitis and characterized both

conditions as job related. He later concurred in the opinion of Dr. Button, a hand and arm specialist, that claimant's hand and arm complaints were functional and that she may never have had tendonitis. Winslow never explained how claimant's work caused the tendonitis and did not say that her work was the major contributing cause of the condition.

Won did not examine claimant until nearly four months after she had left work. He diagnosed chronic strain or sprain of the neck, left shoulder and hand and later diagnosed carpal tunnel syndrome, chronic cervicothoracic joint dysfunction and tendonitis of the left elbow. He stated that claimant was "injured" on her job on May 16, 1986, and made no other causal connection between the conditions and claimant's work.

The Board did not err in rejecting Winslow's and Won's opinions. Substantial evidence in the whole record supports the Board's finding that claimant's work was not the major contributing cause of her tendonitis. *Dethlefs v. Hyster Co.,* 295 Or 298, 310, 667 P2d 487 (1983).

■ Claimant also assigns as error that the Board concluded that SAIF had not accepted her claim for tendonitis. She argues that, under *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), once an insurer accepts a claim, it cannot subsequently withdraw its acceptance and deny compensability. *Bauman* applies, however, only after an insurer has accepted a claim.

On June 2, 1986, claimant filed an 801 form claiming two conditions, a skin rash and tendonitis. On June 6, 1986, a SAIF employee placed a check in the "accepted" box on the claim form, in the section reserved for insurer use. SAIF did not then send the marked claim form to claimant. On the same day, however, SAIF sent a notice to claimant that informed her of its acceptance of her "cellulitis/eczema; contact dermatitis" claim. Claimant contends that the check mark on the insurance form constitutes acceptance of her claim for tendonitis as well as for dermatitis.

Claimant had to show that SAIF specifically accepted her tendonitis claim and officially notified her of that acceptance. *Georgia-Pacific v. Piwowar,* 305 Or 494, 500, 753 P2d 948 (1988); *see also Johnson v. Spectra Physics,* 303 Or 49,

56, 733 P2d 1367 (1987). The Board found that SAIF had not accepted the tendonitis claim, and there is substantial evidence to support that finding.

■     Claimant also asserts that SAIF accepted her claim by paying for medical and vocational evaluations of the condition. Even if SAIF paid for the evaluations, that does not constitute acceptance. ORS 656.262(9) provides:

> "Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability."

■     Claimant also assigns error to the Board's holding that the psychological conditions that she allegedly developed as a result of her injuries were not compensable. Her only compensable condition was her hand rash. There is substantial evidence in the record that her psychological conditions were not causally related to the rash. The Board did not err in its conclusion.

■     Claimant's final assignment is that the Board erred in holding that she was not entitled to penalties and attorney fees for SAIF's failure to accept or reject the tendonitis claim in a timely fashion. The Board refused to consider this argument, because claimant had failed adequately to raise the issue before the referee. We agree. Claimant raised, and the referee addressed, penalty and fee issues with respect to several claims, but not with respect to the tendonitis claim.

Affirmed.