AOYAGI, J.
*285 Under ORS 656.386(2)(d), if a workers' compensation claimant finally prevails against the denial of a claim as provided in ORS 656.386(1), the court, board, or administrative law judge (ALJ) may order the workers' compensation insurer to pay the claimant's "reasonable expenses and costs for records, expert opinions and witness fees." However, ordered payments "may not exceed $ 1,500 unless the claimant demonstrates extraordinary circumstances justifying the payment of a greater amount." In this case, the board concluded that claimant had demonstrated extraordinary circumstances and ordered payment of expenses and costs in excess of $ 1,500. Insurer and employer (collectively, "insurer") seek review. For the reasons that follow, we reverse and remand.
I. FACTS
We state the facts in accordance with the board's unchallenged findings of fact, which are the facts for purposes of judicial review. Multnomah County Sheriff's Office v. Edwards , 361 Or. 761, 776, 399 P.3d 969 (2017).
Claimant, an auto parts worker, filed an occupational disease claim for bilateral carpal tunnel syndrome (CTS). He received treatment from Dr. Lowe, a general practitioner, and Dr. Taylor, a neurologist, both of whom opined that his condition was work-related. At insurer's request, Dr. Nolan, a plastic/hand surgeon, examined claimant. After Nolan opined that the condition was not work-related, insurer denied the claim.
Claimant requested a hearing. At the hearing, claimant submitted concurrence reports from Lowe and Taylor, each of whom opined that claimant's condition was work-related. Claimant also submitted a report from Dr. Woolley, a hand and upper extremity surgeon who had recently examined claimant, who also opined that claimant's condition was work-related. After the hearing but before the record closed, Taylor became unsure whether the condition was work-related and effectively withdrew his earlier opinion.
*286 The ALJ set aside the denial of the claim. The ALJ found Lowe's and Woolley's opinions more persuasive than Nolan's opinion, in part because Woolley had rebutted a key piece of Nolan's reasoning.
As part of his order on compensability, the ALJ ordered insurer to pay claimant's "reasonable expenses and costs," pursuant to ORS 656.386(2), without specifying an amount. Claimant thereafter submitted a cost bill to insurer for $ 1,550, which reflected his payments to Lowe ($ 150), Taylor ($ 200), and Woolley ($ 1,200). Insurer promptly paid $ 1,500. Claimant requested a hearing on the remaining $ 50.
At the hearing on costs, claimant argued to the ALJ that extraordinary circumstances existed, under ORS 656.386(2)(d), so as to allow an order to pay costs in excess of $ 1,500. In response, insurer did not contest that claimant's costs were reasonable, but it disputed that claimant had demonstrated extraordinary circumstances.
Relying on a common definition of "extraordinary"-that is, "more than ordinary : not of the ordinary order or pattern < ordinary and [extraordinary] expenses> : going beyond what is usual, regular, common or customary," Webster's Third New International Dictionary 807 (unabridged ed. 2002)-the ALJ concluded "that this record does not establish extraordinary circumstances justifying reimbursement of costs beyond the limit." The ALJ explained his conclusion:
"Turning to the merits, I agree with [insurer's] contention that claimant has not demonstrated extraordinary circumstances justifying reimbursement of costs beyond *658 the $ 1,500 limit. The compensability of the occupational disease claim for bilateral CTS presented an issue of average complexity when compared to other issues decided in this forum, and there was only one carrier-arranged examination (by Dr. Nolan). Further, contrary to claimant's contention, the need to obtain an expert opinion from a specialist-in this case, hand and upper extremity surgeon Dr. Woolley-does not make this case extraordinary. Expert opinions from specialists (e.g., orthopedic surgeons, neurosurgeons) are fairly common in this forum . Because these circumstances are ordinary and common when compared to other cases in this forum, I conclude that claimant is not entitled to reimbursement of costs beyond the $ 1,500 *287 limit in ORS 656.386(2)(d). Accordingly, his request for full reimbursement must be denied."
(Emphases added.)
Claimant appealed to the board. The board adopted the ALJ's findings of fact but disagreed with his ultimate conclusion regarding extraordinary circumstances. Applying the same dictionary definition as the ALJ had, the board concluded that the circumstances of this case were not "usual, regular, common or customary in the forum,"[1] i.e. , that they were extraordinary. Specifically, the board identified the following circumstances as relevant: (1) claimant lacked private health insurance at the time of his injury, had lost his job shortly after the injury, and needed surgery that, realistically, he would only be able to obtain if he prevailed on his workers' compensation claim; (2) insurer had procured the report of a "highly credentialed hand surgeon [Nolan] to support its denial"; (3) Lowe lacked the specialized knowledge of the other physicians, and Taylor's opinion ultimately did not support compensability, so claimant needed a report from a specialist to bolster his position; and (4) Woolley was a "well-qualified hand and upper extremity surgeon" whose report "tipped the scale" in favor of compensability.
The board concluded:
"Based on our experience in deciding contested cases in this forum, we recognize that costs associated with presenting claimants' cases vary. In this case, the preparation of claimant's case required the acquisition of an additional medical report from a specialist to establish the compensability of his claim, and the cost of securing that report brought claimant's costs beyond the customary $ 1,500 limit of ORS 656.386(2)(d). We do not consider the circumstances that required claimant to procure Dr. Woolley's report, in addition to the reports of Drs. Lowe and Taylor, to have been usual, regular, common, or customary in this forum . Therefore, we find 'extraordinary circumstances' justifying payment of an amount greater than $ 1,500 for witness fees, expenses, and costs."
(Emphasis added.)
*288 Insurer requested reconsideration. In its order on reconsideration, which supplemented and modified the order on review, the board discussed the legislative history of ORS 656.386(2). The board reaffirmed its view that whether "extraordinary circumstances" exist is to be evaluated "by examining whether the circumstances of the case were of the type that were usual, regular, common, or customary in this forum." Citing the legislative history-which includes a senator's statement that extraordinary circumstances "is more than just a dollar amount" and that "it has to be demonstrated that those extra expenses were warranted and necessary"[2] -the board stated that it also "look[s] to whether the additional expense was warranted and necessary."
As for applying the standard, the board clarified that, of the circumstances identified in its order on review, it gave "the most weight" to the fact that "claimant would not have been able to prove his claim" without *659 obtaining Woolley's opinion to rebut Nolan's opinion. Thus, "[c]laimant's expenditure of more than $ 1,500 was necessitated by the circumstances of the case, and was decisive to its outcome." The board viewed that fact "alone" as sufficient to establish extraordinary circumstances. The additional circumstances-regarding claimant's lack of private health insurance, job loss, and need for surgery-just "further reinforce[d]," in the board's view, its conclusion that extraordinary circumstances existed "to support a payment of more than $ 1,500." The board ordered insurer to pay the additional $ 50 of costs.
Insurer seeks judicial review, raising three assignments of error.
II. ANALYSIS
All issues presented on review relate to the statutory cap on cost awards in ORS 656.386(2), so we set forth the full text of that statutory provision:
"(2)(a) If a claimant finally prevails against a denial as provided in subsection (1) of this section, the court, *289 board or Administrative Law Judge may order payment of the claimant's reasonable expenses and costs for records, expert opinions and witness fees.
"(b) The court, board or Administrative Law Judge shall determine the reasonableness of witness fees, expenses and costs for the purpose of paragraph (a) of this subsection.
"(c) Payments for witness fees, expenses and costs ordered under this subsection shall be made by the insurer or self-insured employer and are in addition to compensation payable to the claimant.
"(d) Payments for witness fees, expenses and costs ordered under this subsection may not exceed $ 1,500 unless the claimant demonstrates extraordinary circumstances justifying payment of a greater amount."
See also OAR 438-015-0019(2) (providing that the ALJ or board "may award reasonable expenses and costs * * *, not to exceed $ 1,500, unless the claimant demonstrates extraordinary circumstances justifying payment of a greater amount").
A. First Assignment of Error
Insurer first argues that, because claimant failed to demonstrate extraordinary circumstances in his cost bill , the board should not have even considered ordering an award of costs in excess of $ 1,500.[3]
"The court, board or [ALJ] shall determine the reasonableness of witness fees, expenses and costs for the purpose of [ ORS 656.386(2)(a) ]." ORS 656.386(2)(b). By necessity, the court, board, or ALJ must also determine whether extraordinary circumstances exist, if the court, board, or ALJ is considering ordering payment of costs in excess of $ 1,500. See ORS 656.386(2)(d). By administrative rule, however, the board has adopted a procedure under which the insurer handles the initial processing of cost claims without ALJ or board involvement, based on a cost bill submitted by the claimant to the insurer. See OAR 438-015-0019.
*290 Thus, at least initially, the insurer is put in the position of having to assess both reasonableness and extraordinary circumstances.[4]
Insurer's first assignment of error raises a significant question about how an insurer is supposed to evaluate the existence of "extraordinary circumstances," which it is the *660 claimant's burden to demonstrate, if no such circumstances are identified in the claimant's cost bill. That issue is particularly significant in light of the addition of subsection (6) to OAR 438-015-0019 in 2016. Under OAR 438-015-0019(6), if a claimant prevails on a disputed claim for "any increase of costs," the ALJ or the board "shall" award a reasonable assessed attorney fee to the claimant's attorney.
Ultimately, however, we do not reach the procedural issue, because we agree with claimant that it is not properly before us.[5] In the proceeding before the ALJ, insurer pointed out that claimant had not identified any extraordinary circumstances in his cost bill. Insurer did so, however, in the context of arguing generally that claimant had failed to demonstrate extraordinary circumstances. Insurer never argued that, even if claimant had demonstrated extraordinary circumstances to the ALJ, the ALJ could not order payment of costs in excess of $ 1,500, because claimant was required to make that demonstration in the cost bill itself. When insurer made the latter argument to the board, the board declined to address it because it had not been raised to the ALJ.
*291 "It is generally recognized that the Board has discretion on whether to reach issues not raised before the ALJ." Fred Meyer, Inc. v. Hofstetter , 151 Or. App. 21, 26, 950 P.2d 322 (1997). Here, the board expressly declined to address the alleged procedural deficiency in the cost bill, and insurer has not assigned error to that decision, instead arguing only the merits of the issue.[6] But we will not review the merits of that issue when the board did not decide it. See Stevenson v. Blue Cross of Oregon , 108 Or. App. 247, 252, 814 P.2d 185 (1991). We also reject insurer's request for plain-error review. Even assuming that we could apply that doctrine in this procedural posture, the correct interpretation of OAR 438-015-0019 is not something that is "obvious" and "not reasonably in dispute," as required for plain-error review. Ailes v. Portland Meadows, Inc. , 312 Or. 376, 381, 823 P.2d 956 (1991).
B. Second and Third Assignments of Error
In its second assignment of error, insurer contends that the board misconstrued ORS 656.386(2)(d). Specifically, insurer argues that the board conflated "extraordinary" and "reasonable" when it concluded that claimant's need for a specialist's opinion to establish the compensability of his claim was alone sufficient to demonstrate extraordinary circumstances. In its third assignment of error, insurer challenges the board's order as not supported by substantial evidence and reason. Those two assignments are closely related and might better be characterized as a single assignment, so we discuss them together. See Simonsen v. Ford Motor Co. , 196 Or. App. 460, 465 n. 7, 102 P.3d 710 (2004), rev. den. , 338 Or. 681, 115 P.3d 246 (2005) ("As we have endeavored to explain, assignments of error are to be directed against rulings by the tribunal and not against components of the tribunal's reasoning or analysis that underlie that ruling.").
We begin with the statutory construction question. By definition, statutes are law, and, as such, "their *292 interpretation always is a question of law." Karjalainen v. Curtis Johnston & Pennywise, Inc. , 208 Or. App. 674, 681, 146 P.3d 336 (2006). At the same time, an administrative agency may have a "role * * * in the construction and application of statutes enacted by the legislature," depending "on the precise nature of the statutory wording in dispute." Id . at 679, 146 P.3d 336. " 'Exact' terms are those that impart precise meaning and, in effect, require no interpretation at all." Id . at 680, 146 P.3d 336. " 'Inexact' terms are less precise" and open to different interpretations. Id . However, they are still complete expressions *661 of legislative intent, Springfield Education Assn. v. School Dist. , 290 Or. 217, 224-25, 621 P.2d 547 (1980), which intent is to be discerned by applying the ordinary rules of statutory construction. Karjalainen , 208 Or. App. at 681, 146 P.3d 336. Finally, " '[d]elegative' terms are those that express 'non-completed legislation which the agency is given delegated authority to complete.' " Id . at 680, 146 P.3d 336 (quoting Springfield Education Assn. , 290 Or. at 228, 621 P.2d 547 ). "Whether legislation is exact, inexact, or delegative is itself a question of statutory construction * * *." Matter of Comp. of Muliro , 359 Or. 736, 742, 380 P.3d 270 (2016).
In this case, we conclude that "extraordinary circumstances" in ORS 656.386(2)(d) is an inexact term. That is, it is a complete expression of legislative intent but is less precise than an exact term and therefore requires the application of ordinary rules of statutory construction to discern the legislative intent.[7] Cf. J. R. Simplot Co. v. Dept. of Agriculture , 340 Or. 188, 197-98, 131 P.3d 162 (2006) (the phrase "reasonably necessary to cover the cost of inspection and administration" in ORS 632.940 is an inexact term that expresses a complete legislative policy, specifically the funding of an inspection program by setting fees that bear a defined relationship with the likely range of costs for the program, and "we review the department's action to determine whether it effectuated that policy");
*293 Schoch v. Leupold & Stevens , 325 Or. 112, 117-18, 934 P.2d 410 (1997) (the phrase "reasonable attorney fee" in ORS 656.382 is an inexact term, and the board must determine, on a case-by-case basis, what constitutes a "reasonable" fee, taking into account "the facts of the case, the interests of the parties appearing before the agency, and the policy or policies of the law").
With that in mind, we apply the ordinary rule of statutory construction that, when the legislature has not defined a word or phrase, and it is not a technical term, we assume that the legislature intended the word or phrase to have its "plain, natural, and ordinary" meaning. PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993). That leads us to agree with the board that "extraordinary circumstances," as used in ORS 656.386 (2)(d), means circumstances that are not usual, regular, common, or customary for workers' compensation matters. See Webster's at 807. To the extent that "extraordinary circumstances" may be considered a legal term of art, the common legal definition is similar. See Black's Law Dictionary 296 (10th ed. 2014) (defining "extraordinary circumstances" as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event").[8]
At the same time, we agree with insurer that, in practice, the board conflated "extraordinary" and "reasonable" when it applied ORS 656.386(2)(d) in this case-at least as the board's reasoning is described in its order on review, as supplemented and modified on reconsideration. The board's ultimate conclusion that it "d[id] not consider the circumstances that required claimant to procure Dr. Woolley's report, in addition to the reports of Drs. Lowe and Taylor, to have been usual, regular, common, or customary in this forum" appears to flow from its prior statements regarding claimant's need for Woolley's report to establish *294 compensability. However, *662 as discussed further later, those prior statements do more to explain why it was reasonable for claimant to incur the cost of obtaining Woolley's report than to explain why the circumstances of this case were extraordinary. The board's order fails to adequately explain why the circumstances were extraordinary, beyond the undisputed fact that it was reasonable for claimant to incur the costs that he did.
The distinction between "reasonable" and "extraordinary" is important. Under ORS 656.386(2)(a), the board may only order an insurer to pay "reasonable expenses and costs for records, expert opinions and witness fees." (Emphasis added.) As such, the legislature assumed that any costs that the board ordered an insurer to pay would be reasonable, and it nonetheless imposed a cap of $ 1,500 in all but "extraordinary circumstances." ORS 656.386(2)(d).
According to the legislative history, the $ 1,500 cap was carefully negotiated. Martin Alvey, testifying on behalf of the Oregon Trial Lawyers Association (OTLA), a proponent of the bill, explained to the Senate Committee on Commerce that the impetus for the bill had been that injured workers were increasingly having to spend substantial amounts of money to obtain expert opinions to establish their claims. Audio Recording, Senate Committee on Commerce, SB 404, Apr. 23, 2007, at 26:30, http://records.sos.state.or.us/ORSOSWebDrawer/RecordHtml/4220008 (accessed Apr. 8, 2019). The bill created a mechanism to obtain reimbursement of those costs. Id. at 27:00. However, the bill proponents had agreed to a $ 1,500 limit on cost awards, absent extraordinary circumstances, as a compromise with employers and insurers. Id . at 27:30.
According to Alvey, the $ 1,500 amount was "a very much hotly debated and compromised limit." Id . at 32:32. During one committee hearing, three senators questioned whether $ 1,500 was sufficient. Id. at 30:45 (comment by Sen. Brad Avakian); id . at 34:00 (comment by Chair Floyd Prozanski); id . at 39:00 (comment by Sen. Rod Monroe). In that context, Alvey stated, "I agree with you that a lot of times you can certainly spend $ 1,500, or maybe more, on *295 just a run-of-the-mill case. But, in order to obtain, frankly, [the Management-Labor Advisory Committee's] approval, we had to agree to a cap." Id . at 33:42. Senator Avakian raised the possibility of increasing the amount, or even eliminating the limit altogether. Id . at 46:10. However, the committee ultimately sent the bill to the full senate with the negotiated limit, see id. at 49:45, and the law was enacted with that limit.
The fact that the limit was part of the same bill that created the right to reimbursement of costs in the first place is significant. In SAIF v. Traner , 273 Or. App. 310, 365 P.3d 1078 (2015), we awarded attorney fees under ORS 656.262(11) (2013), which limited an award to $ 3,000, "absent a showing of extraordinary circumstances." It was undisputed that the claimant had reasonably incurred over $ 16,000 in attorney fees, but we awarded $ 3,000, explaining:
"Although the novelty of the questions is demonstrated by the principal opinion and this opinion on fees, this matter was not extraordinary, all in all. Legal issues were routine, claimant was not deprived of receiving any compensation, and the insurer's disagreement was reasoned and in good faith. The presumptive limit on a fee award was a risk to claimant that was apparent at the outset, and it represents the same legislative policy expressed in the provision creating the right to fees ."
Traner , 273 Or. App. at 322, 365 P.3d 1078 (emphasis added).
The carefully negotiated $ 1,500 cap in ORS 656.386(2)(d) would be meaningless if all that was required to overcome it was for a claimant to show that he reasonably incurred costs in excess of $ 1,500. When the legislature enacted the statute, it could not have meant by "extraordinary circumstances" that claimants typically only need to spend $ 1,500 or less to successfully prevail over a claim denial but that an insurer may be ordered to pay more any time that a claimant reasonably needs to spend more. Paragraph (a) already limits ordered payments to reasonable costs. Construing paragraph (d) to refer only to the frequency with which expenditures over $ 1,500 are necessary would render the cap superfluous and deprive paragraph *663 (d) *296 of all practical effect.[9] See ORS 174.010 (in construing a statute with several particulars, we are to construe the statute, if possible, in a manner that "will give effect to all"); State v. Mayes , 220 Or. App. 385, 389, 186 P.3d 293 (2008) ("We are obliged to construe the statute so as to give effect to all relevant provisions" and therefore assume "that the legislature did not intend any portion of its enactments * * * to be meaningless surplusage.").
As for what types of circumstances might qualify as extraordinary, the legislative history is not especially helpful. The only two specific circumstances that were discussed in committee hearings were an "extraordinarily complex" case, see Audio Recording, House Committee on Business and Labor, SB 404A, May 23, 2007, at 1:35:15 (testimony of attorney Martin Alvey), http://oregon.granicus.com/MediaPlayer.php?clip_id=16241 (accessed Apr. 8, 2019), or a case in which the claimant had to retain a more expensive out-of-region expert because no regional expert was available, see Audio Recording, Senate Committee on Commerce, SB 404, Apr. 23, 2007, at 42:08, http://records.sos.state.or.us/ORSOSWebDrawer/RecordHtml/4220008 (accessed Apr. 8, 2019) (comments by Chair Prozanski and testimony of Alvey). We need not analyze those particular examples, because it is uncontested that neither of those circumstances existed here. The ALJ stated, and the board does not seem to have disagreed, that "the compensability of the occupational disease claim for bilateral CTS presented an issue of average complexity when compared to other issues decided in [the workers' compensation] forum." And it appears that Woolley was practicing in Oregon when he gave his opinion in this case.
So what, if anything, made the circumstances of this case extraordinary? According to the board, it was claimant's need for Woolley's opinion in order to prevail.
*297 Specifically, the board noted that insurer had procured the report of a "highly credentialed" hand surgeon (Nolan), that Lowe was not a specialist, that Taylor's opinion ultimately did not support compensability, and that Woolley was a "well-qualified hand and upper extremity surgeon" whose report "tipped the scale" in favor of compensability.
Yet, the ALJ stated that "[e]xpert opinions from specialists (e.g. , orthopedic surgeons, neurosurgeons) are fairly common in this forum," and the board did not indicate any disagreement with that statement.[10] If that is so, it is not apparent how the fact that both sides obtained expert opinions from specialists, who were each well-qualified, was an extraordinary circumstance. Further, it is not obvious that obtaining an opinion from a general practitioner before obtaining an opinion from a specialist was an uncommon circumstance. As for Taylor, it is unclear how his belated change of opinion, which occurred after claimant obtained Woolley's opinion, contributes to extraordinariness. Finally, when compensability comes down to a dispute between medical experts, and the claimant prevails, it presumably will often be the case that the claimant's expert proved more persuasive and thus "tipped the scale" in favor of compensability, so the extraordinariness of that circumstance is also not obvious. For those reasons, we conclude that the board's order lacks substantial reason.[11]
*664 Lastly, with respect to the board's statement on reconsideration that part of its evaluation of "extraordinary circumstances" was to determine whether the costs over $ 1,500 were "warranted and necessary," insurer and *298 claimant both recognize that the express language of ORS 656.386(2)(d) is controlling and that the board should not have replaced or supplemented that language with one senator's phrasing. Although costs must be reasonable-which would seem to encompass being warranted and necessary (as opposed to unwarranted and unnecessary)-that is of little assistance in determining when "extraordinary circumstances" exist within the meaning of ORS 656.386 (2)(d).
In sum, we conclude that the board's order on review, as supplemented and modified on reconsideration, lacks substantial reason. That is because it fails to explain why the circumstances of this case were extraordinary-relative to other cases in which a claimant successfully proves the compensability of a denied claim (which are the basic circumstances of all cases in which a claimant would be awarded costs under ORS 656.386(2)(d) )-beyond the mere fact that claimant reasonably incurred more than $ 1,500 in costs. The entire purpose of the statutory cap is to limit reimbursable costs to $ 1,500, even if a claimant reasonably incurred costs in excess of that amount, except in extraordinary circumstances.[12] We therefore remand to the board for reconsideration.
Reversed and remanded.

The board had previously relied on the same definition in Donna K. Barnett , 67 Van Natta 181, 182 (2015), and Ken L. Circle , 67 Van Natta 61, 62 (2015).

See Audio Recording, Senate Committee on Commerce, SB 404, Apr. 23, 2007, at 45:10 (statement of Chair Floyd Prozanski), http://records.sos.state.or.us/ORSOSWebDrawer/RecordHtml/4220008 (accessed Apr. 8, 2019).

Throughout this opinion, we use "costs" as shorthand for both costs and expenses, as the parties have done on review, and as the ALJ and the board also did at times.

Under the rule, if the parties stipulate to the amount of costs, the ALJ or board will include the stipulated amount in the compensability order. OAR 438-015-0019(2). Otherwise, the ALJ or board may award "reasonable expenses and costs," without specifying the dollar amount, but "not to exceed $ 1,500, unless the claimant demonstrates extraordinary circumstances justifying payment of a greater amount." Id. The claimant then may "claim" his expenses and costs "by submitting a cost bill" to the insurer or self-insured employer within 30 days after the order becomes final. OAR 438-015-0019(2) - (3). If the parties disagree whether a claimed cost is "reasonable," either party may request a hearing. OAR 438-015-0019(4). If the insurer or self-insured employer requests a hearing, it may delay payment of costs pending resolution; otherwise, it has 30 days after receiving the cost bill to make payments for costs. OAR 438-015-0019(5).

Because we agree with claimant's primary argument regarding the first assignment of error, we do not reach his other arguments regarding that assignment.

In a footnote in its order on reconsideration, the board indicated that, had it reached the merits of insurer's procedural argument, it would "not be inclined" to agree that the cost bill itself must demonstrate extraordinary circumstances. To the extent that insurer is challenging that statement as part of its first assignment of error, that statement is not a ruling-the board's ruling was that it would not decide the procedural issue because it had not been raised to the ALJ.

We note that we reach that conclusion largely without the benefit of briefing by the parties. Claimant suggests that "extraordinary circumstances" in ORS 656.386(2)(d)"may" be a delegative term but never develops that argument. Insurer simply states, without elaboration, that statutory construction is a matter of law. In the end, we must resolve this issue, even without the parties' help, because each class of statutory terms "conveys a different responsibility for the agency in its initial application of the statute and for the court on review of that application." Springfield Educ Assn. , 290 Or. at 223, 621 P.2d 547.

The legislative history contains some support for viewing "extraordinary circumstances" as a legal term of art. See Audio Recording, Senate Committee on Commerce, SB 404, Apr. 23, 2007, at 45:00 (comment by Chair Prozanski that the term "extraordinary circumstances" was "not unique" and appeared in other statutes and case law, and statement of agreement by Senator Avakian), http://records.sos.state.or.us/ORSOSWebDrawer/RecordHtml/4220008 (accessed Apr. 8, 2019).

That is, to the extent it is uncommon for claimants to reasonably incur more than $ 1,500 in costs to successfully challenge a claim denial (or was in 2007), needing to do so may always be considered "extraordinary" in that sense. However, given that ORS 656.386(2)(a) already limits ordered payments to reasonable costs, the legislature must have intended "extraordinary" to refer to circumstances that are extraordinary in some way beyond the mere fact that a claimant reasonably incurred more than $ 1,500 in costs, even if that fact alone makes the situation uncommon.

Insurer asserts, and claimant disputes, that the ALJ's statements about the "average complexity" of this case and the "fairly common" circumstance of parties obtaining expert opinions from specialists are "findings" that the board adopted. The ALJ made those statements in the "conclusions of law" section of his order, and they appear to be based on the ALJ's own experience as an ALJ, rather than evidence. Whether the board adopted or merely did not disagree with those statements does not affect our disposition.

On reconsideration, the board minimized its reliance on claimant's lack of private health insurance, job loss, and inability to afford surgery as factors in its decision. Insurer has not directly challenged the board's nominal reliance on those circumstances, and claimant mentions it only in passing. Under the circumstances, we do not address those additional circumstances, except to note that it is at least not obvious how they are appropriate considerations under ORS 656.386(2)(d).

As previously discussed, in 2007, the legislature was told that the $ 1,500 limit was a "hotly debated" issue and a "compromise" with employers and insurers. 297 Or. App. at ----, 441 P.3d ----. Twelve years later, the cap remains the same as it was in 2007. To the extent that the cap is or has become unreasonably low and impedes access to justice, as claimant argues, those arguments must be directed to the legislature.